[Civ. No. 14616. First Dist., Div. One. May 7, 1951.]

JACK P. SANDERS, as Assignee, etc., Respondent, v. RIVIERA REALTY COMPANY (a Corporation) et al., Appellants.

John V. Copren for Appellants.

Edward J. Lynch for Respondent.

PETERS, P. J.—This appeal presents primarily factual questions. Louis Sanders (who subsequently assigned his judgment to Jack P. Sanders) is the plaintiff. His complaint contains three counts. Count one alleges that on June 7, 1948, plaintiff loaned to Riviera Realty Company, Beutke and Grace the sum of $2,000, "which said sum defendants orally agreed to repay" to plaintiff and have not done so. The

second and third counts are based upon two unpaid and overdue promissory notes payable to plaintiff and alleged to have been executed by Beutke and Grace. Apparently Grace was not served with process, the judgment does not run against him, he did not appear at the trial, and he is not involved on this appeal. Judgment was given against Riviera Realty Company and Beutke on the first count, and against Beutke on the second and third counts. Both of these defendants appeal from the entire judgment, but in their briefs concede its correctness insofar as it relates to the second and third counts of the complaint.

It is somewhat difficult to ascertain the precise objections of appellants to the judgment disposing of the issues alleged in the first count of the complaint. Appellants set forth nine grounds of reversal in their opening brief, but several of the objections are unsupported by a proper record, and several are simply enumerated and not argued. ■ Points unsupported by a proper record or not argued will not be considered on appeal.

The points properly argued are three in number:

1. That the evidence is insufficient to sustain the judgment;

2. That the court erred in admitting into evidence a certain trade acceptance; and

3. That there was a fatal variance between the allegations of the first count of the complaint and the evidence.

■ The court found as true the allegation contained in count one of the complaint to the effect that on June 7, 1948, the plaintiff loaned to Riviera Realty Company the sum of $2,000, which sum defendants orally agreed to repay to plaintiff within 90 days, and did not do so. This is the key finding, and it is amply supported by substantial, although conflicting, evidence.

The record shows that Beutke is the secretary of the Riviera Realty Company, a corporation. No attack is made on that portion of the judgment making count one run against both of these defendants. In other words, if the judgment is valid against Beutke, it is impliedly conceded that it is valid against the corporation.

The plaintiff, Louis Sanders, was engaged in the real estate business, as was Beutke. Robert Popkin, who is not a party to this action, but who was an important actor in the legal drama involved, is also a man of wide business experience. All three were well known to each other, and had been engaged

in several business deals together. In addition, Beutke and Sanders, and Sanders and Popkin had had several prior business deals together.

Sanders testified that on or about June 7, 1948, at the request of Beutke, he loaned the Riviera Realty Company and Beutke the sum of $2,000; that this loan was given in the form of two checks payable to the order of Popkin; that one check was for $200, and the other for $1,800; that the money was requested by and loaned to Beutke, but the checks, at Beutke's request, were made payable to Popkin; that these checks, which were introduced into evidence, were made out in the Crocker Bank in San Francisco and handed to Beutke there; that Popkin was not then present. Both checks were charged against Sanders' bank account, are dated June 10, 1948, and have the word "loan" written on the lower left corner. They are both endorsed by Popkin, and, in addition, the $1,800 check bears an endorsement "for deposit only" to the Bank of America, Auburn, California, Robinson & Robinson, by K. W. Robinson, trust account.

Beutke and Popkin contradicted this testimony. Beutke denied ever seeing the two checks before the trial; denied ever giving Sanders any instructions to pay any money to Popkin; and denied ever being in the Crocker Bank with Sanders. Popkin testified that he got the two checks from Sanders, the $200 in the bank, and the $1,800 at Beutke's house. At one place in his testimony he apparently implied that the money was to be used to pay off several thousand dollars in labor claims against Sanders. Then he testified that the $1,800 was paid to Robinson of Auburn on some deal for boilers. In another part of his testimony he stated that he and Beutke were involved in a timber deal in which they needed $4,950, and that the $2,000 from Sanders was to be used in this deal, but was not, because of his and Beutke's inability to raise the balance needed. He first stated that the money was advanced on a trade acceptance. Then he seemed to reverse this story, and testified that the trade acceptance was given for a conditional sales contract on some grading equipment. Then he stated that no portion of the money was given to Beutke or to Riviera Realty Company, but was used on the boiler deal; that Sanders was present when the money was paid over to Robinson in Auburn. This was denied by Sanders, who denied having any connection with the boiler deal; denied lending the money to Popkin to use on the boiler or any deal; denied any connection with any

74

labor claims; and denied knowing Robinson or ever being in his office.

The trial judge saw these three witnesses and heard them testify. He elected to believe Sanders and to disbelieve Beutke and Popkin. Sanders' testimony is not inherently improbable. This being so, this court has no power to disturb the finding. Sanders' story is that he loaned the money to Beutke and Riviera Realty Company at the request and on the credit of Beutke, and at Beutke's request made the checks payable to Popkin. This evidence amply supports the challenged finding.

Appellants next object to the introduction into evidence of a certain trade acceptance, dated June 7, 1948, drawn by and payable to Louis Sanders, and directed to and accepted by Beutke and Riviera Realty Company. It is made payable September 7, 1948, and is in the sum of $4,950. Sanders testified that the trade acceptance was given to him by Beutke as security for the $2,000 loan, at the time the two checks were delivered by Sanders to Beutke; that Beutke originally wanted to borrow $4,950, but Sanders could only raise the $2,000; that when the checks were delivered to Beutke the latter agreed to repay the $2,000 within 30 or 60 days; that the only writings he had as evidence of the loan were the two checks and the trade acceptance given as security.

Beutke's version of the origin and function of the trade acceptance was entirely different from that testified to by Sanders. He testified that it was issued in connection with a transaction involving some road equipment which was supposed to be delivered to Riviera Realty Company by Sanders and Popkin. A conditional sales contract dated May 15, 1948, between Popkin as seller and the Riviera Realty Company as buyer was introduced into evidence. Sanders is not named in the document. This contract calls for the sale of two pieces of equipment to Riviera for $4,950. Typed in the document appears the following:

"The above paid for in full by Trade Acceptance No. 3 dated ######## June 7th 1948 Payable to Louis Sanders, 3055 Gough St. S.F."

Beutke testified that originally the portion typed over with the "##" marks contained the date of another trade acceptance which was improperly made out, and that the date of the second one was typed in later. It is quite apparent that the portion of the quotation following the word "dated" was typed in after the first portion of the quotation had been

typed. According to Beutke this equipment had an encumbrance on it which Sanders agreed to pay off by advancing money to Popkin. Beutke testified that he never received this equipment, and Popkin admitted that he never delivered it.

It seems to be the theory of appellants that the trade acceptance was produced by Sanders to satisfy the statute of frauds—section 1973.2 of the Code of Civil Procedure and section 1624.2 of the Civil Code—requiring a special promise to answer for the debt, default, or miscarriage of another to be in writing. Appellants argue that the document cannot be used for that purpose because it was between Popkin and Beutke and had nothing to do with any loans made by Sanders to Popkin. Appellants seem to be of the opinion that the trial court held Beutke as a surety for Popkin, and that the trade acceptance was the writing upon which Sanders relied to take the case out of the statute of frauds. The trade acceptance was not offered or admitted into evidence on any such theory. When it was offered by Sanders, and appellants had objected, the trial court admitted it "only as corroborative support of what went on between them, solely for that purpose." It was not the theory of Sanders or of the trial court that Sanders loaned the money to Popkin and that Beutke was surety for Popkin. It was their theory that the money was loaned directly to Beutke, but at his direction the checks were made payable to Popkin. The mere fact that the consideration passed to a third party does not prevent appellants from being the principal debtors. (*Merz* v. *Poole,* 82 Cal.App. 12 [254 P. 914].) Whether a promise is original or collateral is a question of fact. (*Ackley* v. *Prime,* 99 Cal.App. 534 [278 P. 932].) The trial court having found that the promise was an original one, and that finding being supported, the issue of surety disappears from the case. The trade acceptance was admitted not as evidence of a promise to answer for the debt of another, but as corroborative evidence of the primary obligation, and as corroborative support for Sanders' story that the trade acceptance was given as security for the loan to Beutke.

 The last contention of appellants is that there is a fatal variance between the allegations of the first count and the evidence, in that the complaint alleges a direct loan to appellants while the evidence shows that the money was delivered to Popkin, a third party. This contention misconceives the evidence. The evidence is that the money was loaned

to Beutke and the checks were delivered to him, and that Popkin was named payee at the direction of Beutke. As already pointed out, this made the obligation a primary obligation of Beutke's, not a secondary one. Thus, Sanders correctly alleged that the loan was made to Beutke, and the evidence so shows. There is no variance between the pleading and the proof.

█ It should be noted that Popkin, the recipient of the money, was in court and that appellants did not object to the introduction into evidence of the two checks, nor did they move for a nonsuit on the ground of variance. Under such circumstances, even though there was a variance between the pleading and the proof, appellants must be deemed to have waived the objection. (*Colbert* v. *Colbert,* 28 Cal.2d 276 [169 P.2d 633].)

The judgment is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied June 6, 1951.