[Civ. Nos. 22325, 22436. Second Dist., Div. Three. Feb. 19, 1958.]

MAURICE L. BEIN, INC. (a Corporation) et al., Plaintiffs and Appellants, v. HOUSING AUTHORITY OF THE CITY OF LOS ANGELES, Defendant and Appellant; BERG ELECTRIC CORPORATIONS et al., Respondents.

[Two Cases.]

674

Anderson, McPharlin & Conners, Eldon V. McPharlin and Robert E. Jones for Plaintiffs and Appellants.

James J. Arditto and Stanley A. Furman for Defendant and Appellant.

Max F. Deutz, Chief Assistant United States Attorney, Richard A. Lavine, Assistant United States Attorney, Chief of Civil Division, and Jordan A. Dreifus, Assistant United States Attorney, as Amici Curiae on behalf of Defendant and Appellant.

Harry A. Franklin, Leon J. Garrie, Boyle, Bissell & Atwell and Robert C. Mardian for Respondents.

VALLÉE, J.—Plaintiffs brought this action against defendant Housing Authority of the City of Los Angeles for declaratory relief and damages for breach of contract.

On June 30, 1952, plaintiffs, sometimes referred to as Bein-Daum or as the prime contractor, entered into a written contract with Housing Authority for the construction of a low-rent housing project for the agreed consideration of $4,195,000. Prior to entering into this contract plaintiffs entered into written contracts with certain individuals and corporations, referred to as subcontractors, for performance

of various parts of the work to be performed under the prime contract. The subcontractors were named as defendants in the action. Plaintiffs sought judgment declaring the rights and obligations of all the parties and against Housing Authority for $115,845.55 for its own damages plus the amounts, if any, which the subcontractors might be awarded as damages against plaintiffs. The subcontractors filed cross-complaints against plaintiffs seeking damages against them. The complaint was amended to conform to the claims of certain of the subcontractors. Judgment was for plaintiffs against Housing Authority for $209,510.77, and for the various subcontractors against plaintiffs in varying amounts. Housing Authority appealed from the judgment. It also appealed from an order denying its motion to quash a writ of execution. Plaintiffs filed a precautionary cross-appeal from the judgment in favor of the subcontractors.

About August 10, 1949, Housing Authority entered into an agreement with the city of Los Angeles whereby the city agreed to cooperate in the construction of the housing project, to vacate certain streets and alleys, and to annex certain territory in the county of Los Angeles, referred to as the County Strip, which was necessary to the project site. The invitation for bids for construction of the project provided that no bid should be withdrawn for a period of 30 days after the opening of bids without the consent of Housing Authority. Bids were opened on November 27, 1951, and Bein-Daum was the successful bidder. Thereafter, at the request of Housing Authority, Bein-Daum from time to time extended the period within which it would not withdraw its bid up to and including June 30, 1952, because Housing Authority was engaged in a dispute and litigation with the city concerning the cooperation agreement, the closing of the streets and alleys, and the annexation of the County Strip which ran about through the middle of the project site.

On June 28, 1952, and again on June 30, 1952, prior to the execution of the contract by plaintiffs, Housing Authority represented to plaintiffs that all obstacles in connection with the annexation by the city of Los Angeles of the County Strip had been overcome. The court found the representations were false and known to Housing Authority to be false; plaintiffs relied upon the representations and were thereby induced to execute the contract.

On June 30, 1952, the date the contract was executed,

Housing Authority gave plaintiffs written notice to proceed as of that date with performance of the contract. A few days thereafter Housing Authority gave plaintiffs a second notice to proceed which was also dated June 30, and plaintiffs returned the first notice. The second notice ordered plaintiffs to proceed with the work on that date provided that no construction work should be commenced on the area of the streets and alleys to be closed until that action had been accomplished and that no construction work should be commenced on the County Strip until it was annexed, "both of which proceedings have been in process for some time and the accomplishment of which is required by the peremptory writ of mandate issued by the California Supreme Court in the case of *Housing Authority* v. *City of Los Angeles.*"[1] The court found that Housing Authority represented to plaintiffs that the return of the original notice to proceed and the delivery of the second notice to proceed was merely a formality and that there had been no change in the situation and that plaintiffs would be given possession of the County Strip area within a matter of days or a week or so; the representations were false and known by Housing Authority to be false; plaintiffs relied upon the representations and were thereby induced to return the original notice to proceed and to acknowledge receipt of delivery of the second notice to proceed.

The general scope of the work provided for in the prime contract consisted of the construction of 62 two-story frame, stucco and concrete block apartment buildings totaling 601 dwelling units, and an administration and maintenance building, with all the necessary clearing, grading, excavation, demolition of existing concrete slabs, footings, etc., site improvements, sewer collection system, storm drain, pumps, water, gas and electrical distribution systems, landscape work, and all the appurtenant facilities necessary to put these units into satisfactory operation. The part of the work required by the contract to be constructed on the County Strip consisted of 11 two-story frame, stucco and concrete block apartment buildings totaling 104 dwelling units with excavations, site improvements, and appurtenant facilities.

By the contract, Housing Authority agreed to furnish to the city of Los Angeles drawings and specifications for the work and to obtain approval thereof from the department of

---

[1] *Housing Authority* v. *City of Los Angeles*, 38 Cal.2d 853 [254 P.2d 515]. Also see *Housing Authority* v. *City of Los Angeles*, 40 Cal.2d 682 [256 P.2d].

building and safety and the engineer's office in order that plaintiffs could obtain the necessary permits for construction from the city. The court found Housing Authority failed and refused to furnish to and obtain approval from the city of the drawings and specifications for the work within a reasonable time; and as a result, plaintiffs were prevented from commencing the preliminary site work or any work whatsoever until August 23, 1952. The building permits for the dwelling buildings were not issued until September 12, 1952. The sewer and storm drain permits were not issued until October 16, 1952. The permit for installation of gas mains was not issued until December 4, 1952. The permit for house sewer connections was not issued until April 13, 1953. The County Strip was annexed to the city on June 29, 1953, one year after the prime contract was executed. Bein-Daum and the subcontractors were not given possession of, and were prevented from doing the work on, the County Strip until that date.

A construction progress chart was prepared by Bein-Daum and approved by Housing Authority. The chart provided that the entire work covered by the contract would be completed in 257 days plus 19 days for inclement weather, a total of 276 days. The court found the progress chart was a reasonable and accurate schedule of the time required for the completion of the work shown therein, and that plaintiffs and their subcontractors would have substantially complied with it had it not been for the delay occasioned by the County Strip; that plaintiffs could and would have fully completed the entire project within the period of 276 days from June 30, 1952, or on or before April 2, 1953, except that as a direct result of the failure and refusal by Housing Authority to deliver full possession of, and to permit commencement of construction on, the County Strip and to furnish to and obtain approval within a reasonable time of the plans and specifications from the city of Los Angeles, plaintiffs and the subcontractors were delayed, hindered, and prevented from completing the work until April 15, 1954, when the project was actually completed; and that the total delay was 378 days.

Plaintiffs and the subcontractors were required to carry on their work in a piecemeal and inefficient manner and were unable to coordinate the many operations required in completing the project. There resulted greatly increased overhead expense, loss of efficiency of labor, loss of the use of

equipment, and other expenses which would not have been encountered had they been able to proceed without delay.

On July 19, 1954, three months after the work was completed, Housing Authority prepared a document in which it acknowledged that plaintiffs had been delayed for 365 days by reason of unforeseen causes beyond their control and specifically by reason of the failure of Housing Authority to issue a notice to proceed on the County Strip. This document was executed by Ralph S. Harper who was designated Clerk of the Works for Housing Authority in the contract, by the Development Counsel for Housing Authority, and by plaintiffs.

The court found plaintiffs performed all conditions and provisions of the contract on their part to be performed; and that by reason of and as a direct result of the refusal on the part of Housing Authority and the delay thereby caused, plaintiffs were damaged in the sum of $209,510.77, consisting of $115,413.86 directly sustained by plaintiffs and $94,096.91 sustained by the subcontractors.

*The Appeal of Housing Authority from the Judgment*

The specifications for the project contained this provision (13b):

"b. No payment or compensation of any kind shall be made to the Contractor for damages because of hindrance or delay from any cause in the progress of the work, whether such hindrances or delays be avoidable or unavoidable."

The court found facts giving rise to an estoppel as to this provision and concluded that Housing Authority was estopped to assert it as a defense. It found at the time of the execution of the prime contract Housing Authority represented to plaintiffs that all obstacles in connection with the County Strip or relating to the project had been overcome; that Housing Authority knew at the time of making said representations that there were still obstacles and there would be a lengthy delay before the entire site would be available to plaintiffs; that said representations were made for the purpose of inducing plaintiffs to execute the contract and with the intention that plaintiffs rely thereon; that plaintiffs were ignorant of the true facts and in reliance on the representations of Housing Authority executed the contract and commenced work thereunder. Housing Authority contends the evidence does not support the finding in this respect in that the party estopped must be apprised of the facts (*Safway Steel Products, Inc.* v. *Lefever,* 117 Cal.App.2d 489, 491

[256 P.2d 32]), and that it is clear Housing Authority was ignorant of the true state of facts.

In flagrant violation of the rules, counsel for Housing Authority have not given us the faintest idea respecting the evidence that caused the court to find the facts on which it based its conclusion that Housing Authority was estopped to assert this provision of the contract as a defense. We have neither the time nor the inclination to search the 1,498 pages of the reporter's transcript to find it. *Nichols* v. *Mitchell*, 32 Cal.2d 598 [197 P.2d 550], says (p. 600):

"Such contention requires defendants to demonstrate that there is no substantial evidence to support the challenged findings."

As we said in *Estate of Good*, 146 Cal.App.2d 704 [304 P.2d 196], (p. 706): "We have had occasion to remark before in a similar situation that a claim of insufficiency of the evidence to justify findings, consisting of mere assertion without a fair statement of the evidence, is entitled to no consideration, when it is apparent, as it is here, that a substantial amount of evidence was received on behalf of the respondents. Instead of a fair and sincere effort to show that the trial court was wrong, appellant's brief is a mere challenge to respondents to prove that the court was right. And it is an attempt to place upon the court the burden of discovering without assistance from appellant any weakness in the arguments of the respondents. An appellant is not permitted to evade or shift his responsibility in this manner. [Citation.] And upon more than one occasion we have called attention to our statement to the same effect in *Goldring* v. *Goldring*, 94 Cal.App.2d 643, 645 [211 P.2d 342], and we have said we must either abide by our former statements or tolerate practices which are contrary to first principles of appellate procedure and which place under burdens upon the court."

Counsel for plaintiffs assumed the burden which counsel for Housing Authority unfairly placed upon them. Shortly before the date of execution of the contract Housing Authority's executive director promised and assured plaintiffs that all legal obstacles to the execution of the contract had been removed, and requested plaintiffs to come to the office of the Authority to execute the contract. Prior to the execution of the contract nothing whatsoever was disclosed to plaintiffs concerning the County Strip or the possibility that it might not be available. At the time plaintiffs were given the second notice to proceed they were told by Housing Au-

thority's representative that the situation had not changed in any way, that the County Strip would be annexed within a week or 10 days. At the time the prime contract was signed, and at the time the second notice to proceed was given, Housing Authority knew the city and the city council had taken and would continue to take the position that the writ of mandate of the Supreme Court in *Housing Authority* v. *City of Los Angeles*, 38 Cal.2d 853 [243 P.2d 515], did not require annexation of the County Strip. The representations of Housing Authority were directly contrary to the facts of which it had knowledge at the time it made the representations. The executive director of Housing Authority who made the representations to plaintiffs was an attorney at law, which fact was known to plaintiffs. If Housing Authority had been unable to induce plaintiffs to execute the contract on June 30, 1952, it would have lost its appropriation from Public Housing Authority for the project. Patently the foregoing evidence supports the finding that Housing Authority knew the true facts at the time it made the representations to plaintiffs.

It is urged the court erred in ruling that the executive director of Housing Authority was its agent for the purposes of the contract. We find no error. It was conceded below that the executive director was the person who carried on the day-to-day operations as the responsible head of Housing Authority, and that as executive director he carried out the policies of the housing commission. The representations which induced plaintiffs to execute the contract were made before the contract was signed and the notice to proceed issued. Housing Authority held its executive director out as the person of authority and responsibility in dealing with all phases of the contract.

It is argued that the representation by the executive director of Housing Authority to plaintiffs that all legal obstacles had been removed was the expression of an opinion on a matter of law, and since there was no confidential relation between the executive director and plaintiffs there was no misrepresentation. We think the representation was one of fact. However, if it be assumed the executive director was expressing an opinion, his superior knowledge and special information concerning the subject matter of the representation as shown by the record warranted the court in finding that plaintiffs were entitled to rely on the opinion. (*Sime* v. *Malouf*, 95 Cal.App.2d 82, 101 [212 P.2d 946, 213 P.2d 788].)

On the oral argument it was urged that it is inconceivable the president of Maurice L. Bein, Inc., relied on the representations of Housing Authority. It was said his testimony is inherently improbable. A reviewing court cannot reject the testimony of a witness that has been believed by the trier of fact unless there exists either a physical impossibility that it is true or its falsity is apparent without resorting to inferences or deductions. Even testimony which is subject to justifiable suspicion does not warrant the reversal of a judgment. (*People* v. *Cahan*, 141 Cal.App.2d 891, 897 [297 P.2d 715].) Mr. Bein, president of Maurice L. Bein, Inc., testified he relied on the representation of Housing Authority. This testimony is enough to sustain the finding.

Housing Authority, without reference to the record, says the matters involved were equally available to all parties, and that plaintiffs assumed the risk of the length of the delay. These were questions for the trial court. It appears the city council of Los Angeles did not publicly announce its position that annexation of the County Strip was not required by the writ of mandate until July 15, 1952, more than two weeks after plaintiffs signed the prime contract.

It is claimed there was a fatal variance between pleading and proof. The complaint was on contract and for declaratory relief. In its answer Housing Authority pleaded paragraph 13b of the specifications as an affirmative defense. In response to this defense plaintiffs, without objection, introduced evidence for the purpose of showing that Housing Authority was estopped to raise paragraph 13b as a defense. It is said this evidence was a variance from the complaint. A rule of evidence not invoked is waived. Not having objected to the introduction of the evidence, Housing Authority is deemed to have waived the objection. (*Sanders* v. *Riviera Realty Co.*, 104 Cal.App.2d 70, 76 [230 P.2d 856].)

The specifications for the project contained the provision set forth in the margin.[2] Housing Authority says this provides in effect that plaintiffs' remedy for any delay for any reason whatsoever is an extension of time for completion of the contract. The court found Housing Authority waived this provision and found facts giving rise to an estoppel as

---

[2] "13. a. . . . [T]he right of the Contractor to proceed shall not be terminated or the Contractor charged with liquidated damages because of any delays in the completion of the work due to unforeseeable causes beyond the control and without the fault or negligence of the Contractor, including but not restricted to . . . acts of the Local Authority . . . or delays of subcontractors due to such causes, if the Contractor shall within

to it. Housing Authority claims it did not waive the provision. Since the court concluded on adequate findings based on substantial evidence that Housing Authority is estopped to assert this provision of the specifications as a defense, the point is immaterial. There was much evidence which supports the finding in this respect. On numerous occasions throughout the progress of the work plaintiffs advised Housing Authority they were sustaining damages for which they expected compensation. Housing Authority repeatedly represented to and assured plaintiffs that compensation would be paid for the additional costs and expenses being sustained by them by reason of the delay. It stated to plaintiffs in writing that an audit would be made on substantial completion of the project to determine the loss sustained by plaintiffs and their subcontractors.

The court found that plaintiffs, in good faith and in reliance on all of the representations, assurances, and promises of Housing Authority, in turn made the same representations, assurances, and promises to its subcontractors. Housing Authority asserts error. The argument in this as in most respects goes merely to the weight of the evidence and does not require further notice.

The court found that about July 1952 plaintiffs and Housing Authority entered into an oral agreement by which the latter agreed to deliver full possession of, and to permit commencement of construction on, the County Strip within a few weeks from that date. Housing Authority asserts the finding was error because it had no right under the law to make the County Strip available to plaintiffs until it had been annexed by the city of Los Angeles. Assuming, without deciding, that it was error, the finding is immaterial and the error, if any, is not ground for reversal. (*Moore* v. *Mosher,* 88 Cal.App.2d 324, 325-326 [198 P.2d 714].) The findings in other respects fully support the judgment.

On June 17, 1954, plaintiffs signed and delivered to Housing Authority a document titled ''Certificate and Release.'' The document in paragraph 1 states that plaintiffs

10 days from the beginning of any such delay (unless the Local Authority, with the approval of the PHA, shall grant a further period of time prior to the date of final settlement of the Contract) notify the Contracting Officer in writing of the causes of delay, who shall ascertain the facts and the extent of delay and the Local Authority shall, subject to prior approval of the PHA extend the time for completing the work when in its judgment the findings of fact of the Contracting Officer justify such an extension, and his findings of fact thereon shall be final and conclusive upon the parties hereto.''

certify "that there is due and payable under the contract and duly approved Change Orders and modifications the balance of $226,097.22"; and in paragraph 2 that in addition to that amount there are outstanding and unsettled various items which plaintiffs claim are due and owing by Housing Authority to them including an item reading "Claim for damages in connection with County Strip. $180,000.00." The document says:

"The Contractor further certifies that upon the payment of the amount listed in paragraph 2 hereof, and of any amount which may be deducted from paragraph 1 hereof, he will release THE HOUSING AUTHORITY OF THE CITY OF LOS ANGELES, CALIFORNIA from any and all claims of any nature whatsoever arising out of said contract or modification thereof, and will execute such further releases or assurances as THE HOUSING AUTHORITY OF THE CITY OF LOS ANGELES, CALIFORNIA may request."

The court found that this document "was not a release by plaintiffs of its claims for damages in connection with the County Strip, nor was it intended by either of the parties thereto, to be such a release. Plaintiffs are not limited to the amount as listed in the exceptions in the release and that the exact amount of the claim was not required to be inserted in said exceptions. That defendant Housing Authority had, throughout the progress of the work on said project, represented and assured plaintiffs that they would be compensated for the additional costs due to the delays resulting from the County Strip, and that there would be an equitable adjustment made of their claim; that plaintiffs and defendant subcontractors relied upon the representations and assurances of the Housing Authority that they would be compensated for said additional costs, and the sum of $180,000 was listed in the exceptions in Paragraph II of Exhibit H in reliance upon the representations and assurances from the Housing Authority that an audit would be made to determine the additional costs and an equitable adjustment therafter, made." Housing Authority asserts there is no evidence to support this finding.

We start with the presumption that the record contains evidence to sustain every finding of fact. (*Kruckow* v. *Lesser*, 111 Cal.App.2d 198, 200 [244 P.2d 19].) There is no showing to the contrary. Plaintiffs direct our attention to much evidence which supports the finding. Beginning August 27, 1952, plaintiffs repeatedly complained to Housing Authority about the delay and stated it was costing them unnecessary

expenses for which they would expect compensation. On December 16, 1953, Housing Authority stated in writing that it was mutually agreed the most practical and equitable adjustments of the damages sustained by plaintiffs in connection with the delay in acquisition of the County Strip could be made only after a complete audit of plaintiffs' and their subcontractors' payrolls and accounts of the items related to the claim, that the final claim would be prepared on the substantial completion of the project, and that it was further agreed that as soon as it was "practical" to do so after January 1, 1954, an audit would be started on the records of each subcontractor. Plaintiffs agreed to make all their records available for audit. On July 19, 1954, more than a month after the so-called Certificate and Release was signed, Housing Authority prepared and sent plaintiffs "Change Order No. 34" stating that completion of the work had been delayed by reason of unforeseeable causes beyond the control of plaintiffs and without their fault or negligence, and specifically by reason of failure of the Authority to issue a notice to proceed on the County Strip; that start of work on the County Strip was authorized 365 days after issuance of the first notice to proceed; that plaintiffs' written request for an equitable extension of contract time for 365 calendar days was justified; that execution of the change order by plaintiffs should in no way prejudice their rights in connection with any claims they might wish to assert. On July 20, 1954, plaintiffs sent a long letter to Housing Authority detailing added costs to themselves and their subcontractors "in connection with the failure to annex the County Strip."[3] On November 1, 1954, Housing Authority sent plaintiffs a letter detailing various delays, stating the total delay had been 284 days, and extending the time for completing the work to May 4, 1954. The letter stated that other delays claimed by plaintiffs did not impede completion of the work. On November 12, 1954, plaintiffs wrote Housing Authority, stating they took exception to the statement that other delays did not impede completion of the work and that they intended to pursue all remedies available to them. On November 22, 1954, plaintiffs wrote Housing

[3]The claim of Bein-Daum was about $115,800. The claims of the subcontractors totaled about $60,000. When Housing Authority declined to pay the claims and litigation ensued, Bein-Daum's claim decreased to about $115,000 and the subcontractors' total claims increased to about $94,000. There was testimony that the figure of $60,000 first submitted by the subcontractors was for the purpose of getting the matter settled without litigation.

Authority, stating that the subcontractors in presenting their claims had not added certain items as allowed by the contract and asked that they be added to the amount of plaintiffs' claim. Housing Authority requested plaintiffs to keep accurate records of their costs and expenses resulting from the delay. There was testimony that it was mutually understood between Housing Authority and plaintiffs that the extent of the damage caused by the delay could not be ascertained until the project was completed because only then could a complete audit be made. The project was not completed until April 15, 1954.

The finding with respect to the certificate and release is fully supported by the evidence. Furthermore, the document may be properly construed not to be a release. It says "that upon the payment" of the $180,000 and other items plaintiffs "will release" Housing Authority from all claims arising out of the contract, and "will execute" such further releases or assurances as Housing Authority may request. Housing Authority never paid plaintiffs any part of the $180,000.

The court awarded plaintiffs interest from April 15, 1954, the date the project was completed. Housing Authority asserts it is an agency of the state and that as such it is immune from an award of interest. *Housing Authority* v. *City of Los Angeles,* 38 Cal.2d 853 [243 P.2d 515] says (p. 861): "The housing authority was thereby [Health & Saf. Code, § 34240] created as a state agency, a public body corporate and politic . . . ," the Housing Authority functions as an administrative arm "of the state in pursuing the state concern and effecting the legislative objective." It is the general rule that in the absence of some statutory provision authorizing it, interest may not be recovered against the state or any of its subdivisions. (*McGuire & Hester* v. *City & County of San Francisco,* 113 Cal.App.2d 186, 193 [247 P.2d 934].) In 1955 Civil Code, section 3287, was amended to read:

"Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt. This section is applicable to recovery of damages and interest from any such debtor, including any political subdivision of the State."

Thus from the effective date of the amendment—September 7, 1955—interest was properly awarded. We find no authority, and we have been cited none, authorizing an award of interest prior to that date. There is nothing in the language of the amendment indicating the Legislature intended it should operate retrospectively. (See *State* v. *Industrial Acc. Com.*, 48 Cal.2d 355, 361 [310 P.2d 1].)

Housing Authority contends plaintiffs are not entitled to interest at any time prior to judgment. It is argued the damages plaintiffs sought and were awarded were neither certain nor capable of being made certain by calculation.

■ As a general rule interest in the form of damages is not allowed prior to rendition of judgment on an unliquidated claim or on the amount of a demand which cannot be ascertained either from the face of the contract or by reference to a well-established market value. (14 Cal.Jur.2d 703, § 78.)

■ It has frequently been held that the defendant will be charged with interest for his failure to pay the plaintiff's claim where he has been supplied by invoice or statement with the data necessary to determine the amount due. (14 Cal.Jur.2d 704, § 79.) In the present case plaintiffs, from the inception of their claim for damages resulting from the delay—August 1952—until after the project was completed, supplied Housing Authority with detailed statements of the data necessary to determine the amount due. *Anselmo* v. *Sebastiani*, 219 Cal. 292 [26 P.2d 1], is directly in point. There the plaintiff constructed a building on a cost-plus basis. The defendant did not pay. The trial court awarded interest. On appeal it was held (p. 301):

"Was it error for the court to allow interest from the date of the filing of the complaint? The record shows that shortly after the filing of the complaint, the plaintiffs furnished to the defendants a bill of particulars showing every item of cost incurred in the erection of the preserving building. . . . The contention is made that the amount which the plaintiffs are entitled to recover in this case is unliquidated, and therefore interest should not be allowed until the entry of judgment. This contention, however, is not determinative of the question of interest. If the amount of the indebtedness or the amount owing can be calculated and determined from the statements rendered by the plaintiffs to the defendants, and that statement is found to be true and correct, it is a matter of mere calculation. The court in the instant case found the costs just as set forth by the plaintiffs in their bill of particulars furnished the appellants. . . .

"[P. 302.] 'Where the data necessary to determine the amount due are supplied to the debtor by an invoice or statement, he will be charged with interest for failure to pay.'

"Again, in 15 Ruling Case Law, 7, the rule is thus stated: 'While, as a general rule, interest is not allowable on unliquidated demands, yet it has frequently been held that interest may be allowed as damages, even in the case of unliquidated demands, where the latter are capable of ascertainment by calculation or where they may be determined by reference to well-established market values, together with computation.'

"It does not appear that the accuracy of the bill of particulars rendered by the plaintiffs to the appellants was questioned at the trial of this action. It was urged that certain work was not done, and that the work done was not of the value set forth in the bill of particulars, and a counter-claim was set up in the answer. All of these matters were found against the contention of the appellants. This brings the circumstances within the case of *McCowen* v. *Pew*, 18 Cal.App. 482 [123 P. 354], where, under similar circumstances, interest was allowed." (Also see *Koyer* v. *Detroit F. & M. Ins. Co.*, 9 Cal.2d 336, 345-346 [70 P.2d 927].)     As the trial judge stated, Housing Authority "never actually denied plaintiff's claim for damages for county strip delay." The court erred in awarding interest against Housing Authority prior to September 7, 1955. It did not err in awarding interest against it subsequent to that date.

   The specifications contain a provision with respect to disputes which is set out in the margin.[4]  Housing Au-

---

"'15. DISPUTES

"a. All disputes other than those required to be handled under Section 44 of the General Conditions arising under this Contract or its interpretation, whether involving law or fact or both, or extra work, and all claims for alleged breach of contract shall within ten days of the dispute be presented to the Contracting Officer for decision. A copy of the notice of the dispute shall be forwarded to the Field Office of the Public Housing Administration. Such notice need not detail the amount of the claim but shall state the facts surrounding the claim in sufficient detail to identify the claim, together with its character and scope. In the meantime the Contractor shall proceed with the work as directed. The parties agree that any claim not presented within the time limit specified within this subsection is waived, except that if the claim is of a continuing character and notice of the claim is not given within ten days of its commencement, the claim will be considered only for a period commencing ten days prior to the receipt by the Local Authority of notice thereof.

"b. The Contractor shall submit in detail his claim and his proof thereof. The decision of the Contracting Officer shall be approved in writing by the Public Housing Administration prior to its issuance. Any

thority asserts this is an administrative remedy; that plaintiffs did not exhaust it; therefore they were barred from commencing this action. The point is wholly without merit. The provision is in the nature of a condition precedent to the bringing of an action. Plaintiffs presented their claim to Housing Authority and requested a final decision from the contracting officer. The executive director of Housing Authority told plaintiffs the claim would not be paid. The contracting officer never rendered a decision as required by the specifications. Plaintiffs did not file suit until February 3, 1955. They did all they could to comply with section 15 of the specifications.

■■■■ Housing Authority contends the damages awarded are excessive. The contract provided that plaintiffs complete the work within 390 days exclusive of landscaping. The court found plaintiffs could and would have completed the entire project within a period of 276 days except that, as a direct result of the refusal to permit commencement of construction on the County Strip and the failure to obtain approval within a reasonable time of the plans and specifications from the city of Los Angeles, they were delayed, hindered, and prevented from completing the work until April 15, 1954, resulting in a delay to plaintiffs of 378 days. The court awarded damages for the delay in completing the project based on a period of 257 days as provided in the progress schedule plus 19 days of inclement weather, a total of 276 days. As we understand the argument of Housing Authority,

decision not so approved shall be a nullity. Each decision by the Contracting Officer shall be in writing and shall be mailed to the Contractor by registered mail, return receipt requested. A copy shall be delivered to the Project Engineer.

"c. If the Contractor does not agree with any decision of the Contracting Officer, he shall except from the final release the decision in question.

"d. Provided the Contractor has:

"(1) given notice of any dispute within the time limit stated in 15a. above;

"(2) presented his dispute to the Contracting Officer;

"(3) taken exception in his release from the Contracting Officer's decision; and

"(4) brought suit within 120 days after receipt of final payment under this Contract or within six months of a written request by the Local Authority that he submit a final voucher and release, whichever time is the lesser;

"the Contracting Officer's decision shall not be final and conclusive but the dispute shall be tried in court on its merits. In the event the above conditions precedent have not been met, the Contractor hereby agrees that his non-compliance with the conditions precedent constitutes a waiver of his right to assert said claim."

it is that damages should have been awarded on the basis of 390 days rather than 276 days. The 390 days fixed in the contract was not an estimate of the time in which plaintiffs would actually complete the project; it simply required completion within not more than 390 days. (See *Peter Kiewit Sons' Co.* v. *United States,* 151 F.Supp. 726.)

In this connection Housing Authority argues that the court did not determine and deduct the length of the delay actually contemplated by the parties. It does not point to any evidence that a delay of the short time represented in which the County Strip would be available—a week or 10 days—would have delayed completion of the entire project within the time specified in the contract. Obviously from June 30, 1952, the date the contract was signed, several weeks would be required for engineering, organization, surveying, clearing of land, and other preliminary work in preparation for the actual construction on a project of this size. Housing Authority admitted in writing the period of delay was not less than 365 days. Again the argument goes to the weight of the evidence, a matter with which we have no concern.

The court included in the award to plaintiffs the damages sustained by the subcontractors and rendered judgment in favor of the subcontractors for their damages against plaintiffs. One of the subcontractors was S. A. Cummings. Of the total awarded to plaintiffs, $54,191.82 is attributable to damages sustained by Cummings. Housing Authority claims this amount is not supported by the evidence; that $3,339 only should have been awarded. Again counsel for Housing Authority does not give us all the evidence bearing on the subject. They omit mention of some 100 pages of testimony relative to Cummings' damages. Suffice it to say there was evidence that the loss sustained by Cummings included basic direct loss from operation—$26,830.78; rise in prices on materials—$9,744.03; lost time, grade crew and equipment—$3,339; loss on general overhead—$14,278.01; total, $54,191.82, the amount awarded.

### The Appeal of Housing Authority from the Order re Execution

Housing Authority's notice of appeal from the judgment was filed on July 26, 1956. On November 21, 1956, plaintiffs obtained an order for the issuance of a writ of execution. The writ was issued and levied on Housing Authority's bank account. Housing Authority moved the court for an order vacating the order for issuance of the writ and quashing the

writ and levy on the ground all its property is exempt from execution, and on the further ground execution was automatically stayed by the filing of the notice of appeal under section 1058 of the Code of Civil Procedure. The trial court made an order denying the motion to vacate the order for issuance of the writ and denied the motion to quash the writ and the levy, and ordered that further proceedings under the writ and levy and delivery of the funds in the bank account be stayed under section 1058 of the Code of Civil Procedure pending final determination of the appeal from the judgment.[5] Housing Authority appeals from that order.

Section 34217 of the Health and Safety Code in pertinent part provides:

"Execution or other judicial process shall not issue against the *real property* of an authority nor shall any judgment against an authority be a charge or lien upon its *real property*." (Emphasis added.)

The statute exempts from execution the real property of a housing authority—not the personal property. It seems evident that if the Legislature had intended that personal property of a housing authority should be exempt from execution it would have said so. This view is reinforced by the fact that nowhere in the housing authority law or elsewhere is any method provided by which a housing authority can raise money to pay a judgment against it. The judge who heard the motion was of the opinion that if plaintiffs do not have the legal right to execution on the personal property of

---

[5]The order reads:

"IT IS HEREBY ORDERED:

"That said defendant's motion to set aside the ex parte order of this Court made on November 21, 1956, directing the Clerk of this Court to issue a writ of execution on behalf of plaintiffs herein and against defendant Housing Authority of the City of Los Angeles, California, is denied;

"That said defendant's motion to quash the said writ of execution is denied;

"That said defendant's motion to vacate the levy made under said writ of execution upon the Bank of America National Trust and Savings Association, Main Office, Los Angeles, California, for all moneys, goods, credits, effects, debts due or owing, or any personal property of said defendant, including the bank account of said defendant entitled 'Housing Authority of the City of Los Angeles, California, Development Fund No. 4 for project CAL 4-13 to CAL 4-22' is denied;

"That all further proceedings herein, including further proceedings under said writ of execution and levy thereunder and delivery of said funds in said bank account under said levy of execution to the Sheriff of the County of Los Angeles for or on behalf of plaintiffs are stayed under the provisions of Section 1058 of the Code of Civil Procedure pending final determination of the appeal from the judgment rendered herein."

Housing Authority their judgment must remain unsatisfied. Housing Authority says the Public Housing Authority of the United States will be required to supply the funds to pay the judgment. Neither the United States nor the Public Housing Authority is a party to this lawsuit and we are not advised how plaintiffs could compel either to pay the judgment.

Section 1058 of the Code of Civil Procedure provides that in any civil action "no bond, written undertaking, or security can be required of the State, or the people thereof, or any officer thereof, or of any county, city and county, city, district, or town, or of the United States or any instrumentality or agency thereof, or any officer thereof."[6]

Housing Authority is a state agency. (*Housing Authority* v. *City of Los Angeles,* 38 Cal.2d 853, 861 [243 P.2d 515].) It is a public corporation. (*Housing Authority* v. *Dockweiler,* 14 Cal.2d 437, 458 [94 P.2d 794].) Public housing projects are public uses and purposes. (*Id.,* 449-452.) "Section 4 of the Housing Authorities Law, *supra,* defines an authority as 'a public body, corporate and politic.' Such an authority is not unlike an irrigation district which, though held not to be a municipal corporation within the meaning of the quoted constitutional provision [art. XIII, § 1], has been held to be a public corporation for municipal purposes whose property is exempt from taxation." (*Id.,* 453.) "The public purpose here involved was declared and made law by the legislature of this state when it enacted the Housing Authorities Law and related acts. That law applies to and affects the entire citizenry of the state as a body, whether the details incident thereto be executed in one or another, in several or in all of the political subdivisions authorized to act thereunder." (*Kleiber* v. *City & County of San Francisco,* 18 Cal.2d 718, 723 [117 P.2d 657].)

---

[6]Section 1058 reads: "In any civil action or proceeding wherein the State, or the people of the State, is a party plaintiff, or any State officer, in his official capacity or on behalf of the State, or any county, city and county, city, district, or town, or the United States or any instrumentality or agency thereof, or any Federal officer in his official capacity or on behalf of the United States or any instrumentality or agency thereof, is a party plaintiff or defendant, no bond, written undertaking, or security can be required of the State, or the people thereof, or any officer thereof, or of any county, city and county, city, district, or town, or of the United States or any instrumentality or agency thereof, or any officer thereof; but on complying with the other provisions of this code the State, or the people thereof, or any State officer acting in his official capacity, or the United States or any instrumentality or agency thereof, or any Federal officer acting in his official capacity, shall have the same rights, remedies, and benefits as if the bond, undertaking, or security were given and approved as required by this code."

Referring to section 1058, the court in *Lamberson* v. *Jefferds,* 116 Cal. 492 [48 P. 485], stated (p. 493):

"It will be observed that the section makes special mention of the state and state officers, but while it mentions counties it omits the mention of county officers, hence it is argued with considerable force that the design was to exclude them. And as it is provided in section 940 that no appeal is effectual unless an undertaking be given, every exception must be express, and none can be implied.

"The county is, however, the real party in interest. It was held in *Scheerer* v. *Edgar,* 67 Cal. 377, that in such matters the auditor does not act in his individual right, but in that of the city and county. For that reason it was held that section 946 was applicable, and the court might, by order, dispense with the undertaking. If that be so, the county is the real party in interest, and the case is evidently within the reason of the rule laid down as to counties."

*San Francisco Law etc. Co.* v. *State,* 141 Cal. 354 [74 P. 1047], states (p. 356):

"It is claimed that the appeal is ineffectual for any purpose, by reason of the fact that no undertaking on appeal for damages and costs has ever been filed by the state, or deposit of money made in lieu thereof, and that the giving of such undertaking has not been waived. (Code Civ. Proc., §§ 940, 941.)

"This claim is based upon the fact that section 1058 of the Code of Civil Procedure does not in terms exempt the state from giving undertakings when it is a party *defendant,* although the section does in terms so except the state when it is a party plaintiff, and exempts any state officer, when, *in his official capacity or in behalf of the state,* he is a party plaintiff or defendant. The intention to dispense with the bond in all cases where the state or the people of the state, or any state officer in behalf of the state, or any county, city and county, city, or town is a party plaintiff or defendant, is clear, and the reason for the omission from section 1058 of the Code of Civil Procedure of any provision in terms exempting the state from the giving of bonds and undertakings in actions wherein it is a party defendant was probably, as suggested by plaintiff, that at the time of the last amendment of said section the state could not be brought into court as a defendant. The general provisions relative to the giving of an undertaking on appeal as security for damages and costs (sections 940 and 941 of the Code of Civil Procedure) have not been amended since the year 1874. As originally enacted, and as last

amended, they were not intended to include the state, for by section 1058 of the Code of Civil Procedure, as originally enacted in 1872, explicit provision was made for the exemption of the state from the effect of such provisions in all cases in which it could then be made a party.

"This being the condition of the legislation at the time of the enactment of the various provisions authorizing suits against the state on claims for money, the general words of the statutory provisions relative to undertakings on appeal should not be held applicable to the state, unless the intention of the legislature that they should be so applicable is clearly shown. [Citations.] No such intention anywhere appears."

*Mercantile Trust Co.* v. *Miller,* 166 Cal. 563 [137 P. 913], was mandate to compel the superior court to issue a writ of execution. Because of insolvency, the superintendent of banks had taken possession of the affairs and assets of a bank for the purpose of liquidation. After judgment in a suit in the superior court the superintendent of banks had appealed. The superior court had ruled that on the appeal the superintendent of banks should have a stay of proceedings without executing any undertaking. After quoting section 1058 the court stated (p. 567):

"It seems clear to us that the state superintendent of banks when performing the duties of his office, required of him by the statute, in taking possession of and proceeding to liquidate the assets of a banking corporation, is acting as a state officer in his official capacity, within the meaning of this section, and that the effect of the section is to exempt him from the obligation to give an undertaking on appeal for a stay of execution, when, as such officer, he takes an appeal from any judgment in which, as such superintendent of banks, he is interested on behalf of any bank under his control, and of whose assets he has taken possession. He is not acting under appointment from the court or by authority of the court, but by authority of the statute which creates his office, authorizes his appointment, and enjoins upon him the duties which he is at that time performing. The effect of this statute is to justify the court in its refusal to order the execution."

*Jones* v. *Richardson,* 9 Cal.App.2d 657, 659 [50 P.2d 810], held that the building and loan commissioner, acting as liquidator of a building and loan association, was not required to give an undertaking in procuring the appointment of a receiver.

The principle applied in the foregoing cases is applicable here. Housing Authority is a state agency and functions as an administrative arm of the state in pursuing the state concern and effecting the legislative objective. It is not required to give an undertaking on appeal.

The effect of the order appealed from is to compel the money levied upon to remain on deposit in lieu of an undertaking pending final determination of Housing Authority's appeal from the judgment. It is equivalent to requiring the filing of an undertaking. When the appeal from the judgment was perfected it released from levy the property which had been levied upon under the writ of execution. (Code Civ. Proc., § 946.)

### The Cross-Appeal of Plaintiffs

Plaintiffs' cross-appeal is precautionary only. They say it is their position "that the judgment entered by the trial court was proper but that should the Court reverse or modify the judgment of the Prime Contractor against the Housing Authority, it should to the same extent reverse or modify the judgments of the Subcontractors against the Prime Contractor." Interest was properly awarded the subcontractors against plaintiffs. Plaintiffs do not contend otherwise. Since we have concluded that the judgment in favor of plaintiffs against Housing Authority should be affirmed except as to the award of interest, it is unnecessary to consider plaintiffs' cross-appeal.

The judgment is modified by striking from paragraph (1) thereof the phrase "from April 15, 1954," and inserting in lieu thereof the phrase "from September 7, 1955." As thus modified, it is affirmed. The order appealed from is reversed. The costs on appeal shall be borne as follows: In Civil Number 22325 Housing Authority shall bear its own costs and those of plaintiffs; plaintiffs shall bear those of the subcontractors. In Civil Number 22436 plaintiffs shall bear the cost of the clerk's transcript.

Shinn, P. J., and Patrosso, J. pro tem.,* concurred.

Petitions for a rehearing were denied March 12, 1958.

---

*Assigned by Chairman of Judicial Council.