[Civ. No. 25797.   Second Dist., Div. Three.   Oct. 8, 1962.]

M & M HOUSE MOVING COMPANY, Plaintiff and Respondent, v. S. ROGER JANIS, Defendant and Appellant.

*Retired Justice of the Supreme Court sitting pro tempore under assignment by the Chairman of the Judicial Council.

Gordon Stater for Defendant and Appellant.

Alden F. Houck and Alfred J. Borstein for Plaintiff and Respondent.

FORD, J.—The plaintiff, a corporation, brought an action against the defendants Janis and Zeff to recover amounts alleged to be due to the plaintiff as the result of ten transactions involving the moving of buildings. The trial court rendered judgment against both defendants and the defendant Janis has appealed therefrom.[1]

The first contention made is that the evidence showed that the obligation, if any, was owed not to the plaintiff corporation but to a partnership which preceded it. The only basis for such assertion is the following testimony of Mr. Mitchell: "Q. Now, in 1958, what was your position with

[1] In the notice of appeal it is stated that the appeal is also from the order denying the defendant Janis' motion for a new trial. But that order is not appealable. (*Rodriguez* v. *Barnett*, 52 Cal.2d 154, 156 [338 P.2d 907].)

M & M House Moving Company? A. 1958 I was—well, I was just partnership owner. Q. Well, now, '58 would be only two years ago. Was it a corporation or a partnership? A. If I recall, it's just a partnership at that time. Q. And you were a partner in the company? A. That's correct.'' Aside from the fact that Mr. Mitchell's statement was obviously not made with certainty, there is no merit to the point because there was no denial in the defendant Janis' answer of the allegations of the complaint that the plaintiff was a corporation and that at all times mentioned in the complaint it was a contractor engaged in the business of moving buildings and was licensed as such contractor by the State of California. Consequently, there was no issue raised as to whether the transactions occurred before the corporation began to engage in business and while its predecessor, the partnership, was active. As stated in *Fuentes* v. *Tucker,* 31 Cal.2d 1, at page 4 [187 P.2d 752] : ''One of the functions of pleadings is to limit the issues and narrow the proofs. If facts alleged in the complaint are not controverted by the answer, they are not in issue, and no evidence need be offered to prove their existence. [Citations.] Evidence which is not pertinent to the issues raised by the pleadings is immaterial, and it is error to allow the introduction of such evidence. [Citations.]'' (See also *County of Los Angeles* v. *Beverley,* 126 Cal.App.2d 89, 92 [271 P.2d 965].)

The trial court found as follows: To the extent that defendant Ray Zeff ordered, directed or controlled said moving services, he acted as agent for defendant S. Roger Janis and in a joint venture in which both of said defendants were engaged.'' The defendant Janis asserts that since the existence of a joint venture was not pleaded, admission of evidence with respect thereto was error. The contention is devoid of merit. (*Hansen* v. *Burford,* 212 Cal. 100, 108-109 [297 P. 908].) Moreover, the defendant Janis is not in a position to claim prejudice since in his pretrial statement he said in part: ''Plaintiff contends that the defendant Janis was engaged in a joint venture enterprise with Ray Zeff, and defendant Janis denies that there ever was a joint venture arrangement with Ray Zeff.''

The defendant Janis argues that there is insufficient support in the record for the determination made by the trial court as to his liability with respect to the various transactions. As to some of the transactions it is asserted that the defendant Janis could not be liable because he was on a

European trip when the obligations were incurred. Overlooked is the testimony of Mr. Mitchell, one of the men in charge of the operations of the plaintiff, that the defendant Janis told him that he was going to Europe and that Ray Zeff would be handling his business. Janis told him, ''If you get short of money Ray will have my address and contact me, and I will send you money any time that you get short and need it.'' Mr. Zeff testified that he had worked as a salesman and was paid a commission of $300 for every building sold by him which was to be moved to a new location. But before Mr. Janis went to Europe, he and Mr. Janis talked about a different arrangement. Part of his testimony was: ''A. At that time he suggested when he went to Europe we worked [*sic*] on a different basis entirely, that I would become manager and could handle the buildings on a 50% of the profit, providing, of course, I took care of the detail work that went along with it.'' The defendant Janis and Mr. Zeff talked to Mr. Mitchell. As to that conversation Mr. Zeff testified in part as follows: ''. . . he [Janis] said that I was the manager and would operate in the handling of all his buildings, in the moving and anything that I said would go, . . . and that Bill Mitchell to go [*sic*] along with whatever I felt was necessary.'' The evidence gave substantial support to the determination that Mr. Zeff was authorized to incur obligations in connection with the moving of buildings, while Mr. Janis was away, for which the latter would be responsible. (See *Lindner* v. *Friednash,* 160 Cal.App.2d 511, 517 [325 P.2d 612].)

One transaction (designated as item 1) related to extra work after the building involved had reached its new location. A charge of $168 was made. Mr. Zeff testified that he had no discussion with Mr. Mitchell with respect to payment for that work but that the work was requested of the plaintiff by the new owner, Mr. Long. There was evidence that after the work had been done, Mr. Janis said that he would collect the additional costs that Mr. Long had incurred and that, ''in fact, he would guarantee payment on that.'' This was after Mr. Janis had returned from Europe. But that oral undertaking was of no legal effect because of the statute of frauds. (See *Swim* v. *Juhl,* 72 Cal.App. 363, 366 [237 P. 552].) The record fails to disclose a basis for liability on the part of the defendant Janis.

Another transaction (item 2) involved a charge for ''waiting time.'' Mr. Nesbit, the buyer of the structure being

moved, said that he would pay for the extra time which would elapse while the plaintiff's men were waiting for the underpinning to be completed at the new location. Shortly after that conversation, Mr. Mitchell communicated with Mr. Zeff and Mr. Zeff "guaranteed" that the plaintiff would be paid for the waiting time. It was a reasonable inference from the record that the plaintiff's decision to stand by was based on Mr. Zeff's statement. ▪ As stated in *First Securities Co., Ltd.* v. *Story*, 9 Cal.App.2d 270 [49 P.2d 862], at page 273: "The word 'guarantee' does not necessarily import a contract of guaranty, but may import an original obligation or promise. (*Meyer* v. *Moore*, 72 Cal.App. 367 [237 P. 550].) The nature of the obligation, whether primary or secondary, is the determining feature." (See also *Yankelewitch* v. *Beach*, 115 Cal.App. 629, 632 [2 P.2d 498]; *Ackley* v. *Prime*, 99 Cal.App. 534, 540 [278 P. 932]; 3 Williston on Contracts (3rd ed. 1960), § 465, p. 405.) ▪ The applicable law with respect to whether such a promise is within the statute of frauds (Code Civ. Proc., § 1973, subd. 2; Civ. Code, § 1624, subd. 2) is set forth in *Schumm* v. *Berg*, 37 Cal.2d 174 [231 P.2d 39, 21 A.L.R.2d 1051], at page 187, as follows: "The rule is stated: 'Whenever a promise to answer an antecedent obligation of another is made upon a fresh consideration beneficial to the promisor, no matter from what source it may move, the promise is an original one and valid though oral; or, as was said in an early case, whenever the leading and main object of the promisor is not to become surety or guarantor of another, but to subserve some purpose or interest of his own, his promise is not within the statute, although the effect of the promise may be to pay the debt or discharge the obligation of another.' (12 Cal.Jur., 869.) (See *Greenfield* v. *Sudden Lumber Co.*, 18 Cal.App.2d 709 [64 P.2d 1007].)" ▪ Under the evidence the trial court was warranted in determining that the promise of Zeff was original and not collateral in nature, and with that finding of fact this court is not free to interfere. (See *Sanders* v. *Riviera Realty Co.*, 104 Cal.App.2d 70, 75 [230 P.2d 856]; *Madera Sugar Pine Co.* v. *Weakley*, 127 Cal.App. 733, 737 [16 P.2d 321]; note, 20 A.L.R.2d 246, 248, 251.)

▪ With respect to item 3, as to which a balance of $392 was claimed, the defendant Janis contends that no liability on his part could exist because the plaintiff cashed his check upon which, following the printed statement that "by endorsement this check when paid is accepted in full payment of

the following account," a notation was written as follows: "Move & lower 531 W. Santa Barbara to 95th & Avalon & 640 E. Imperial." However, under the evidence the trial court was not compelled to reach the conclusion that the written notation on the check embraced the items for which the charge of $392 was made. Mr. Mitchell testified that he gave a bid to Mr. Janis with respect to moving the buildings and that Mr. Janis accepted the bid. But the buildings had to be cut into sections before they were moved. Mr. Long, the person acquiring the structures, requested that they be cut. Mr. Mitchell testified that that was done pursuant to the request of both Mr. Long and Mr. Janis. Originally Mr. Long had said that he would do his own "cutting" but found that he was too busy to do so and he asked the plaintiff to do the work, to which the plaintiff agreed in the expectation of being paid by Mr. Long. However, Mr. Mitchell further testified as follows: "Q. Do you remember what the conversation was about the cost of cutting, this conversation with Mr. Janis? A. I told him that house had to be cut, and then closed up with plywood so the children can't get in there and tear it up 'cause it would be open. He told me definitely, 'you go ahead, cut the house, close it up, taken care of it,' he says, 'I have got the money in escrow and you will get your money before Mr. Long gets his money.' . . . Q. . . . Then when you negotiated with Mr. Long, did you negotiate a particular price for the cutting? A. Yes. Q. And was that price mentioned to Mr. Janis? A. Yes, Mr. Janis knows [sic] what the price was. Q. Was that done before he made this arrangement to pay you out of escrow? A. Yes."[2] The charge for that work was $168. The remaining part of the item of $392 was for "$224 extra labor on the lot." There is no merit in the defendant Janis' contention on appeal that the notation on his check precluded recovery against him. (See *Southern Cal. Disinfecting Co.* v. *Lomkin,* 183 Cal.App.2d 431, 442-443 [7 Cal.Rptr. 43].) Since that is the only contention that he makes in his brief as to item 3, it is not necessary to undertake a discussion with respect thereto of the nature of that set forth hereinabove as to item 2.

On this appeal, the defendant Janis contends that he is not

[2]It was, of course, for the trial court to resolve any inconsistencies in the testimony of Mr. Mitchell. (*Sukiasian* v. *Shakarian,* 115 Cal.App.2d 798, 801 [252 P.2d 956]; *Peterson* v. *Peterson,* 74 Cal.App.2d 312, 319 [168 P.2d 474].)

liable for items 4 and 6 because he was in Europe when the amounts claimed were incurred. There was evidence that in each instance Mr. Zeff ordered the work done. The contention is without merit for reasons heretofore noted.

No substantial argument is offered as to items 5, 7 and 8. As to the latter item, Mr. Mitchell testified that the order was given either by Mr. Zeff or Mr. Janis.

With respect to item 9, it is true that a receipt was signed in which it was stated that payment had been made in full. But a receipt of that nature may be explained by parol evidence showing the purpose for which it was given. (*Carpenter* v. *Markham*, 172 Cal. 112, 115 [155 P. 644] ; *Brown* v. *Crown Gold Milling Co.*, 150 Cal. 376, 389 [89 P. 86] ; *Coats* v. *General Motors Corp.*, 3 Cal.App.2d 340, 352 [39 P.2d 838] ; 9 Wigmore on Evidence (3d ed. 1940) § 2432, pp. 104-105.) Such evidence was before the trial court. Mr. Mitchell testified that Mr. Janis and Mr. Zeff asked for the receipt so that it could be used to facilitate the release of money in an escrow and stated that they would thereafter return with the money and pay the plaintiff what was due to it. Mr. Zeff corroborated the testimony of Mr. Mitchell. On December 27, 1958, the defendant Janis paid $4,000 to the plaintiff, but the rest of the bill was not paid.

With respect to the last transaction involved in this case, item 10, Mr. Mitchell testified that he negotiated the price for the work with the defendant Janis personally. The argument made by the defendant Janis is that the ''record is in dispute on this item'' and ''that he did not order this work and insists that he is not liable.'' The argument is devoid of merit.

The trial court determined that the plaintiff was entitled to judgment in the principal sum of $11,181.51, together with interest in the sum of $1,497.84. Judgment was rendered for $12,679.75. For the reasons herein stated, the judgment must be reduced by the amount involved in item 1, $168, together with interest thereon from July 21, 1958, to February 15, 1961, the date of the judgment, in the amount of $30.22. The judgment is accordingly modified so that the amount thereof is $12,481.13. As so modified, the judgment is affirmed. The attempted appeal from the order denying the motion for a new trial is dismissed. Each party shall bear his or its own costs on this appeal.

Shinn, P. J., and Files, J., concurred.