[Civ. No. 36988. Second Dist., Div. Two. Apr. 27, 1971.]

GEORGE COUTIN, Plaintiff and Appellant, v.
YETTA NESSANBAUM, Defendant and Respondent.

COUNSEL

Bernard & Jaffe and F. Filmore Jaffe for Plaintiff and Appellant.

Gerald B. Yam for Defendant and Respondent.

OPINION

**HERNDON, J.**—Appellant brought this action to recover from respondent the unpaid balance on a promissory note of which respondent's son-in-law, Frank Zarider, was the maker. Respondent guaranteed payment of the note by written instrument under circumstances hereinafter described.

The trial court concluded that respondent "was exonerated of her obligations" under the guaranty by reason of appellant's conduct in compromising his claim against the principal debtor and in executing instruments by the terms of which he agreed that his acceptance of the payments therein recited would "constitute a full and complete release of all claims and demands of [appellant] against said debtor [Zarider]." Judgment for respondent was entered accordingly. On this appeal from the judgment appellant defines the "issues to be determined" as follows:

"1. Was the document denominated Unconditional and Absolute Guaranty a direct and primary obligation of Respondent to pay to Appellant the balance of the sum due from Zarider should Appellant forbear any action for a period of two years? or

"2. Is the document above alluded to a true guaranty by which Nessanbaum would be relieved from any obligation thereunder by the action of Appellant in signing the Consent to Compromise and accepting the sum of FIVE THOUSAND ONE HUNDRED FIFTY-TWO DOLLARS AND SEVENTY CENTS ($5,152.70) in conformity with the Consent to Compromise?"

Respondent states the "question on appeal" more simply as follows: "The sole question on appeal is, [whether] the agreement entitled 'Unconditional and Absolute Guaranty', [is] a guaranty agreement or a new and primary obligation of Respondent."

### Statement of the Facts

The following facts were either stipulated to by the parties or found to be true by the court:

On October 5, 1965, at Los Angeles, California, one Frank Zarider,

the son-in-law of respondent herein, made, executed and delivered to the Union Bank his promissory note wherein the said Zarider promised to pay to the Union Bank on or before January 17, 1966, the principal sum of $14,000, together with interest thereon at the rate of 6½ percent per annum.

On the 5th day of October, 1965, prior to the delivery of said note to the Union Bank, appellant, as a part of the same transaction, endorsed and guaranteed in writing on the reverse side of said promissory note the payment of the indebtedness evidenced thereby.

On the 17th day of January, 1966, the entire amount of said promissory note became due and payable. The said Frank Zarider failed and refused to pay said sum or any part thereof to the Union Bank, and as a consequence, appellant was obligated to and did, on January 21, 1966, pay to said Union Bank the sum of $14,088.14, the then existing balance of principal and interest to said date.

On the 21st day of January, 1966, the Union Bank assigned and transferred and set over to the appellant all their right, title and interest in and to the note executed by Frank Zarider and guaranteed by appellant. A copy of the appellant's check delivered to Union Bank in payment of the note is attached as an exhibit to appellant's complaint.

On or about the 26th day of January, 1966, appellant and respondent signed a document entitled "Unconditional and Absolute Guaranty," a true copy of which is set forth as an exhibit to appellant's complaint. This document was prepared by attorney Arnold S. Malter, who was then appellant's counsel.

Following recitals of the facts relating to Zarider's default in failing to repay the Union Bank loan, appellant's payment thereof pursuant to his guaranty and the assignment of the Zarider note to appellant, the described document reads in pertinent part as follows:

"Now THEREFORE, in consideration of the above, their mutual promises and other good and valuable consideration; the receipt and sufficiency whereof and of all consideration above mentioned is hereby expressly acknowledged, NESSANBAUM agrees, as a direct and primary obligation, unconditionally and absolutely does hereby guarantee to COUTIN the prompt and full payment of all principal and interest due under the terms of the promissory note executed by ZARIDER on or about October 5, 1965, payment thereof to be due on January 26, 1968. A copy of the said note is attached hereto and made a part hereof. . . .

"NESSANBAUM hereby expressly waives presentment for payment, notice

of presentment and nonpayment, protest and notice of protest of said promissory note and any other applicable prerequisite under any laws of the State of California and/or any other security hereinabove referred to. It is an express condition hereof, notwithstanding any other rule of law, or statute to the contrary, that no action or proceeding need be instituted against the maker of the aforesaid promissory note as a condition precedent to COUTIN's proceeding against NESSANBAUM and NESSANBAUM expressly covenants and agrees that COUTIN may proceed against the undersigned, without first proceeding against or liquidating or otherwise disposing of or taking any other action relative to the above mentioned promissory note.

"NESSANBAUM hereby expressly acknowledges, agrees and warrants that the absolute and unconditional guaranty herein given is a prime and paramount inducement to COUTIN to forbear from proceeding against ZARIDER up to and including January 26, 1968."

From and after January 26, 1966, and for a period of in excess of two years thereafter, appellant did forbear from pursuing his legal actions against Frank Zarider.

On September 26, 1966, appellant signed an instrument entitled "Consent to Compromise" which provides as follows:

"KNOW ALL MEN BY THESE PRESENTS that the undersigned is a creditor of FRANK ZARIDER doing business as LIQUOR LAND, 21217-19 Sherman Way, Canoga Park, California, and hereby consents, stipulates and agrees with said debtor, and all his other creditors executing a like instrument to this one, to compromise and to settle his/its claim against said debtor in consideration of the payment of the sums outlined in Bulletin No. 3 of M. M. Moyer to creditors under date of August 12, 1966.

"Upon receipt by the undersigned of its pro rata share thereof, after allowance for administrative fees, this shall constitute a full and complete release of all claims and demands of the undersigned against said debtor."

On April 27, 1967, appellant received and accepted from the Credit Managers Association of Southern California a check in the amount of $5,152.70, which payment was made pursuant to and in conformity with the foregoing Consent to Compromise. Appellant endorsed said check beneath the legend appearing on the reverse side thereof reading as follows: "The use, endorsement, or retention of this check by the payee or its agent or attorney shall constitute full and complete payment and settlement against debtor named on reverse side hereof. Any alteration of this endorsement voids this check."

On March 18, 1968, appellant demanded of respondent the payment to

him of the sum of $7,961.47, the then unpaid balance of the principal of said promissory note and interest to March 18, 1968. Respondent refused to pay said sum or any part thereof.

On July 16, 1968, appellant filed the instant action. After a nonjury trial the court below made its findings of facts, the most pertinent of which are Findings Numbers II and VIII. Those findings read as follows:

"II. That on or about January 26, 1966, plaintiff and defendant entered into an agreement entitled 'UNCONDITIONAL AND ABSOLUTE GUARANTY', a true copy of which is attached to plaintiff's Complaint and marked Exhibit C. The Court found that it was the intent of the parties in executing the agreement dated January 26, 1966, and entitled UNCONDITIONAL AND ABSOLUTE GUARANTY, attached to plaintiff's complaint as Exhibit C, that if the primary obligor, Frank Zarider, did not pay the promissory note dated October 5, 1965, a true copy of which is attached to plaintiff's complaint as Exhibit A, then defendant, Yetta Nessanbaum, guaranteed that she would pay said sum. . . .

"VIII. The Court found that defendant Yetta Nessanbaum was exonerated of her obligations under the agreement entitled UNCONDITIONAL AND ABSOLUTE GUARANTY, dated January 26, 1966, copy of which is attached to plaintiff's complaint as Exhibit C, by reason of the document entitled CONSENT TO COMPROMISE, dated September 26, 1966, executed by plaintiff and attached to defendant's Answer and marked Exhibit A, and by reason of the endorsement and acceptance of the proceeds of a check dated April 27, 1967, from the Credit Managers Association of Southern California, payor, to George Coutin, payee, a true copy of which is attached to defendant's Answer and marked Exhibit B."

The determinative issue is whether the instant agreement entitled "Unconditional and Absolute Guaranty" is an agreement to pay the debt of another or a new and primary obligation of respondent.[1]

If the agreement in question is construed to be a true guaranty as the trial court found it to be, Civil Code section 2819 is applicable to exonerate

---

[1]Section 2787 of the Civil Code defines suretyship as follows: "The distinction between sureties and guarantors is hereby abolished. The terms and their derivatives, wherever used in this code or in any other statute or law of this State now in force or hereafter enacted, shall have the same meaning, as hereafter in this section defined. A surety or guarantor is one who promises to answer for the debt, default, or miscarriage of another, or hypothecates property as security therefor. Guaranties of collection and continuing guaranties are forms of suretyship obligations, and except in so far as necessary in order to give effect to provisions specially relating thereto, shall be subject to all provisions of law relating to suretyships in general."

respondent from any obligations under the agreement.[2]  ■  "A guarantor is released if the original obligation is altered (Civ. Code, § 2819) and a guarantor is not liable upon any contract not within the terms of his guaranty (*Garfield* v. *Ford,* 191 Cal. 69, 71 [214 P. 963])." (*Ralston-Purina Co.* v. *Carter,* 210 Cal.App.2d 372, 378 [26 Cal.Rptr. 690].)

■  Appellant concedes that if the agreement signed by respondent was intended to be a guaranty, the action of appellant in executing the "Consent to Compromise" operated to exonerate respondent. We hold that the finding of the trial court with respect to the intent of the parties as to the nature of respondent's obligation is supported by the evidence.

There is an apparent contradiction in terms in the language of the agreement itself. The title of the agreement "Unconditional and Absolute Guaranty" is inconsistent with the language "NESSANBAUM agrees, as a *direct* and *primary* obligation, unconditionally and absolutely does hereby *guarantee* to COUTIN the prompt and full payment of all principal and interest due under the terms of the promissory note executed by ZARIDER . . ." (Italics added.)

■  It is well settled that "an instrument in writing is construed most strongly against the party who drafted it or caused it to be drafted. (Civ. Code, § 1654; [citations].)" (*Laux* v. *Freed,* 53 Cal.2d 512, 524 [2 Cal. Rptr. 265, 348 P.2d 873].)  ■  Here, as previously set out, the agreement was drafted by appellant's attorney. Hence, any ambiguities therein must be construed against him. This factor alone lends support to the finding the the agreement in question was intended to be a contract of suretyship.

■  Appellant correctly points out that use of "the word 'guarantee' does not necessarily import a contract of guaranty, but may import an original obligation or promise," citing *M & M House Moving Co.* v. *Janis,* 208 Cal.App.2d 267, 272 [25 Cal.Rptr. 408], and *First Securities Co., Ltd.* v. *Story,* 9 Cal.App.2d 270, 273 [49 P.2d 862], for this proposition. In the first of these two cited cases it was held that the determinative issue was a question of fact and that the finding of the trial court would not be disturbed. In the second, the language of the agreement was so clear and unambiguous that its nature was determined as a pure matter of law. "The nature of the obligation, whether primary or secondary, is the determining feature."

■  The court below correctly considered the testimony of the parties

---

[2]Civil Code section 2819 provides as follows: "A surety is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the surety the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended."

in determining whether the obligation of the respondent was primary or secondary since the language of the instant agreement does not necessarily preclude the construction for which appellant contends. Extrinsic evidence relating to the issue of the true intent of the agreement was therefore admissible. The applicable rule is stated in *Reid* v. *Overland Machined Products,* 55 Cal.2d 203, 210 [10 Cal.Rptr. 819, 359 P.2d 251], as follows: "When the language used in the contract is fairly susceptible to the construction claimed by one of the parties, extrinsic evidence may be considered, not to vary or modify the terms of the agreement, but to aid the court in ascertaining its true meaning."

The testimony of appellant was as follows: "Q. You wanted her to guarantee payment of this note; is that correct? A. No. She offered. Q. Wasn't this the intent of your agreement, for her to pay if Frank Zarider did not pay? A. Yes. Q. You had your attorney prepare an agreement to that effect, is that correct? A. Yes, sir. . . . Q. She would pay you if Mr. Zarider didn't pay you? A. That's right. . . . THE COURT: In other words, you are saying if Zarider paid she wouldn't have to pay? A. If Zarider paid the $14,000. THE COURT: She wouldn't have to? A. That's right. But she guaranteed I would not lose any money of the amount I paid to the bank."

The quoted testimony of appellant tends to support the finding that respondent's obligation was intended to be secondary to that of Zarider, the principal debtor. Appellant has argued that "Respondent should be comforted by the fact that Appellant received the sum of $5,152.70 from the Credit Men's Association which had the effect of reducing her obligation to the Appellant, for this she should not complain." But as stated in *Ralston-Purina Co.* v. *Carter, supra,* 210 Cal.App.2d 372, 378, "Parties to an obligation cannot alter its terms without the guarantor's consent even though it may be to the guarantor's advantage (*McManus* v. *Temple Estate Co.,* 10 Cal.App.2d 419, 421 [51 P.2d 1124])."

The judgment is affirmed.

Roth, P. J., and Compton, J., concurred.