[No. C064954. Third Dist. Dec. 2, 2011.]

GRAY1 CPB, LLC, Plaintiff and Respondent, v.
SOTIRIS KOLOKOTRONIS, Defendant and Appellant.

COUNSEL

Saied Kashani for Defendant and Appellant.

DLA Piper, Robert J. Odson, John D. Spurling and Staci M. Tomita for Plaintiff and Respondent.

OPINION

RAYE, P. J.—We cannot rewrite contracts when the economy suffers a severe downturn. Sotiris Kolokotronis, stung by the crash in the real estate market, seeks to upset a judgment in favor of Central Pacific Bank's successor, Gray1 CPB, LLC. Despite signing a document entitled "Continuing Guaranty" wherein he unconditionally guaranteed to pay an amount equal to the borrower's debt, affixing his signature over the designation "Guarantor" and filing a declaration under penalty of perjury that he understood he would be responsible to pay the borrower's debt if it was unable to do so, Kolokotronis insists the guaranty was not a guaranty but a demand note protected by the antideficiency statutes and the one-action rule. We disagree and affirm the judgment.

## FACTS

The financial world that existed in the summer of 2006, when Kolokotronis (Guarantor) signed a Continuing Guaranty related to a $17.7 million loan from Central Pacific Bank (Original Lender) to Sheldon Terrace, LLC (Borrower), had changed drastically when the loan came due in August of 2008. By April of 2008 the value of the real property securing the loan had plummeted and the Original Lender notified the Borrower and the Guarantor that the loan was in default because the value of the security was far less than the balance of the loan. Neither the Borrower nor the Guarantor cured the default. By August 2008 the balance of the note was due. Neither the Borrower nor the Guarantor paid the principal and interest due under the loan at maturity. The Original Lender assigned the note to Gray1 CPB, LLC (the Lender).

The Lender filed the underlying action against the Guarantor for breach of the guaranty and then a motion for summary adjudication. At issue on appeal of the judgment in favor of the Lender are not the inequities and injustices occasioned by the financial crisis or the ethics of those who may have profited from it. Thus many of the allegations and innuendos peppering the opening brief are irrelevant to the narrow contract question before us. We must turn to the terms of the agreement to determine whether the document

entitled "Continuing Guaranty" was a guaranty, as urged by the Lender, or a demand note, as urged by the Guarantor.

Whether the agreement is a guaranty or a demand note has grave implications for the simple reason that a guarantor can waive its right to compel a lender to foreclose on the security first as well as its rights under the various antideficiency statutes. Here the Guarantor waived these rights as we describe below. He seeks to invalidate the dispositive waivers by construing his agreement not as a guaranty, but as a demand note.

*Pertinent Terms of the Continuing Guaranty*

*Purpose*

As a material inducement to the Original Lender to make the loan to the Borrower, the Guarantor executed the Continuing Guaranty, which provides as follows: "In order to induce Lender to extend Credit to Borrower, and in consideration of Credit heretofore, now or hereafter granted to Borrower by Lender, Guarantor agrees . . . ."

Credit is defined in paragraph 1. "The term 'Credit' is used throughout this Continuing Guaranty ('Guaranty') in its most comprehensive sense and means and includes, without limitation, any and all loans, advances, debts, obligations and liabilities of any kind or nature owed by Borrower to Lender, heretofore, now, or hereafter made, incurred or created, arising from the Loan Documents as defined in the Construction Loan Agreement dated August 24, 2006, between Borrower and Lender ('Agreement'), whether due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined, secured or unsecured, whether on original, renewed, extended or revised terms . . . , whether principal, interest, fees, or expenses . . . ."

*Obligations*

The Guarantor's liability, pursuant to paragraph 3 of the Continuing Guaranty, is coterminous with the Borrower's. "Guarantor's liability hereunder shall be equal to the full amount of the Credit. In addition, Guarantor agrees to bear and be liable to Lender for the interest and expenses enumerated in paragraph 21 hereof. . . . Any payment received by Lender from Borrower, from any other person or from proceeds of collateral granted by Borrower or any other person shall not reduce Guarantor's liability hereunder."

The Guarantor's pledge is unconditional. Paragraph 4 provides: "Guarantor unconditionally guarantees and agrees to pay to Lender, on demand, in lawful

money of the United States of America, an amount equal to the amount of the Credit, and to otherwise perform any obligations of Borrower undertaken pursuant to any Credit. This Guaranty is a guaranty of payment and not of collection. No payment received by Lender from Borrower or any other person or from proceeds of collateral granted by Borrower or any other person shall reduce Guarantor's liability hereunder for the remaining, unpaid Credit."

The Guarantor's pledge is continuing. Thus, according to paragraph 34, "This is a continuing guaranty of the Credit, including those arising after any repayment and reborrowing and under any successive and future transactions which may increase, renew or continue the original Credit. . . ."

*Waivers*

1. The Guarantor waives rights to subrogation, reimbursement, indemnification, and contribution, and rights set forth in sections 2787 through 2855 of the Civil Code. "Guarantor acknowledges that Guarantor may have certain rights under applicable law which, if not waived by Guarantor, might provide Guarantor with defenses against Guarantor's liability under this Guaranty. Among those rights, are certain rights of subrogation, reimbursement, indemnification and contribution, and rights provided in sections 2787 to 2855, inclusive, of the California Civil Code. Guarantor waives all of Guarantor's rights of subrogation, reimbursement, indemnification, and contribution, and any other rights and defenses that are or may become available to Guarantor by reason of any or all of California Civil Code sections 2787 to 2855, inclusive, including, without limitation, Guarantor's rights: [¶] . . . [¶]

"(g) To require Lender to proceed against Borrower, or any other guarantor, endorser, co-signer, or other person, or to pursue or refrain from pursuing any other remedy in Lender's power; [¶] . . . [¶]

"(i) To have any security for the Credit first applied to satisfy or discharge the Credit . . . ."

2. The Guarantor waived all rights and defenses he would have otherwise had because the debt was secured by the Borrower's real property. Paragraph 7 provides: "Guarantor also waives all rights and defenses that Guarantor may have because the Borrower's debt is secured by real property. This means, among other things: (1) Lender may collect from Guarantor without first foreclosing on any real or personal property collateral pledged or assigned by Borrower; (2) If Lender forecloses on any real property collateral pledged by the Borrower: (A) The amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if

the collateral is worth more than the sale price, (B) Lender may collect from Guarantor even if Lender, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Borrower. This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because Borrower's debt is secured by real property. These rights and defenses include, but are not limited to, any rights or defenses directly or indirectly based upon Sections 580a, 580b, 580d, or 726 of the California Code of Civil Procedure."

3. The Guarantor also waived all of his rights and defenses arising out of an election of remedies by the Original Lender. Pursuant to paragraph 8, "Guarantor also waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against the principal by the operation of Section 580d of the California Code of Civil Procedure or otherwise."

### Relationship to the Borrower

The agreement expressly acknowledges that the Borrower's obligations are separate and independent of the Guarantor's. Paragraph 16 states: "Guarantor's obligations hereunder are not contingent upon and are independent of the obligations of Borrower, or any other guarantor or surety of the Credit. . . . A separate action or actions may be brought and prosecuted against Guarantor whether action is brought against Borrower or any other guarantor or whether Borrower or any other guarantor be joined in any such action or actions."

Under the terms of the promissory note, the Original Lender was obligated to pay the Borrower up to $17.7 million, and the Borrower promised to pay off the outstanding balance on the note by August 24, 2008. In the construction loan agreement, the Borrower represented and warranted that "the realizable value of its Collateral is, and at all times that it may have obligations hereunder shall continue to be, sufficient to satisfy any and all obligations" under the note. Moreover, under the same agreement, "An 'Event of Default' occurs hereunder if: [¶] . . . [¶] . . . [a]ny representations or warranties made or agreed to be made in any of the Loan Documents or this Agreement . . . shall be breached in any respect . . . ." The warranties must continue to be true and correct as a condition precedent to any disbursement.

By April of 2008 the loan was in default because the value of the security was less than the outstanding balance of the loan. By letter dated April 4, 2008, the Original Lender specifically notified the Borrower and the Guarantor

of the defaults and demanded them to cure the defaults. As mentioned above, neither the Borrower nor the Guarantor cured the defaults. As a result, the Original Lender refused to honor a draw request to pay subcontractors. The note came due in August 2008, but neither the Borrower nor the Guarantor paid off the loan. The Lender (Gray1) did not foreclose on the Borrower's security, but filed an action on the guaranty against the Guarantor.

The trial court granted the Lender's motion for summary adjudication and entered judgment in favor of the Lender. Upon "consideration of all the language of the loan documentation, including giving effect to every part of the language of the entire Continuing Guaranty, and with the admitted understanding of the opposing party Guarantor that he was signing a continuing guaranty, the Court concludes that that [*sic*] the document must be interpreted as a guaranty, and not as a demand note." The Guarantor appeals.

## DISCUSSION

■ Summary adjudication shall be granted "if it completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty." (Code Civ. Proc., § 437c, subd. (f)(1).) A lender is entitled to judgment on a breach of guaranty claim based upon undisputed evidence that (1) there is a valid guaranty, (2) the borrower has defaulted, and (3) the guarantor failed to perform under the guaranty. (*Torrey Pines Bank v. Superior Court* (1989) 216 Cal.App.3d 813, 819 [265 Cal.Rptr. 217].) The Guarantor contends there is no valid guaranty as a matter of law. He does not argue there are triable issues of material fact regarding the validity of the guaranty, the Borrower's default, or his failure to perform. Thus the resolution of the appeal turns on our construction of the document entitled "Continuing Guaranty."

A few basic rules of contract interpretation apply here. "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . . ." (Civ. Code, § 1639.) "In the construction of a statute or instrument, the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted . . . ." (Code Civ. Proc., § 1858.)

■ The Guarantor extracts parts of the document to support his contention he was a primary obligor rather than a guarantor. He points to the language "whether due or not due," "on demand," and "not contingent upon and are independent of the obligations of Borrower" as evidence of an intent to create a demand note. However, "[a] contract must be interpreted so as to give effect to the mutual intention of the parties, and the whole of a contract is to be taken together, so as to give effect to every part, if reasonably

practicable, each clause helping to interpret the other." (*El Dora Oil Co. v. Gibson* (1927) 201 Cal. 231, 235 [256 P. 550].) As the trial court pointed out in its ruling, "The Court has a duty to construe every provision of a written instrument as to give force and effect, not only to every clause but to every word in it, so that no clause or word may become redundant." (See *Pico Citizens Bank v. Tafco Inc.* (1958) 165 Cal.App.2d 739, 746 [332 P.2d 739].)

Under California law, "[a] surety or guarantor is one who promises to answer for the debt, default, or miscarriage of another, or hypothecates property as security therefor." (Civ. Code, § 2787.) That is precisely what the Guarantor here promised to do by signing the Continuing Guaranty. He "unconditionally guarantees" to pay "an amount equal to the amount of the Credit," and Credit means "all loans, advances, debts, obligations and liabilities of any kind or nature owed by Borrower to Lender."

Moreover, throughout the Continuing Guaranty, the Guarantor promises to answer for the Borrower's debt. He requests the Original Lender "to extend Credit to Borrower." Indeed, the very purpose of the agreement was "[i]n order to induce Lender to extend Credit to Borrower, and in consideration of Credit heretofore, now or hereafter granted to Borrower by Lender." And the Guarantor acknowledged "that Lender has or may in the future extend Credit to Borrower in reliance on Guarantor's unconditional promise to repay any and all credit."

Nevertheless, the Guarantor would have us discard the title, purpose, and nature of the document and thereby ignore the import of the vast majority of the language used throughout the guaranty, based on a strained interpretation of three isolated phrases. His interpretation would in fact nullify a majority of the provisions of the guaranty. We examine the three little red herrings.

First, he argues that the language "due or not due" alone suggests the instrument is a demand note. The sentence explaining the breadth of the obligation under a continuing guaranty broadly defines "Credit" as follows: "The term 'Credit' is used throughout this Continuing Guaranty ('Guaranty') in its most comprehensive sense and means and includes, without limitation, any and all loans, advances, debts, obligations and liabilities of any kind or nature owed by Borrower to Lender, . . . arising from the Loan Documents as defined in the Construction Loan Agreement dated August 24, 2006, between Borrower and Lender ('Agreement'), whether due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined, secured or unsecured, whether on original, renewed, extended or revised terms . . . ."

The Guarantor argues that whereas the Borrower was not obligated to pay off the loan for two years under the terms of the promissory note, he was

obligated to pay the full amount of the note "from day one, long before it was due." In his view, his obligation to pay money before the Borrower was obligated to pay means that he is an original obligor, not a guarantor. Not so.

■ The Continuing Guaranty clearly states that the "Credit" is extended to the Borrower, not the Guarantor; the "Credit" consists of all loans "owed by Borrower to Lender" under the loan agreement, and the guaranty was entered into to "induce Lender to extend Credit to Borrower." In context, the phrase "due or not due" is nothing more than part of the broad definition of the Borrower's obligations that the Guarantor is guaranteeing. The Guarantor simply ignores the essential feature of a "continuing" guaranty, which, under section 2814 of the Civil Code, is a "guaranty relating to a future liability of the principal . . . ." Thus, the Guarantor guaranteed the Borrower's future obligations and liabilities under the loan before actual performance was due. To suggest otherwise is to dismantle the entire notion of a continuing guaranty.

The "due or not due" language must be read in the context of the parties' agreement that the Guarantor would cover both the obligations of the Borrower at the time the guaranty was executed and those the Original Lender would extend to the Borrower in the future in reliance on his unconditional promise to repay any and all "Credit." Certainly advances made in the future were "not due." The language does not mean that the Guarantor is a primary obligor; quite to the contrary, it means he is obligated to answer for future debts assumed by the Borrower.

Nor does the phrase "on demand" transmute the Continuing Guaranty into a demand note. Paragraph 4 provides: "Guarantor unconditionally guarantees and agrees to pay to Lender, on demand, in lawful money of the United States of America, an amount equal to the amount of the Credit [(i.e., borrower's debt)], and to otherwise perform any obligations of Borrower undertaken pursuant to any Credit. This Guaranty is a guaranty of payment and not of collection." The plain meaning of "on demand" is that the Guarantor's obligation to pay does not arise until the Lender demands the Guarantor step in to answer for the debt of the Borrower. It is not, as the Guarantor would have us conclude, a trigger to allow the Lender to ignore the Borrower entirely and demand payment by the Guarantor even in the absence of the Borrower's default.

■ Finally, the acknowledgment that the Guarantor's obligations are "not contingent upon and are independent of the obligations of Borrower" merely provides the Lender with the option to enforce the guaranty following the Borrower's default without first securing a judgment against the Borrower. This meaning is supported by paragraph 16, wherein the parties expressly

agree that "[a] separate action . . . may be brought and prosecuted against Guarantor whether action is brought against Borrower . . . ." The phrase does not undercut the essential nature of the guaranty, but reinforces the flexibility the Continuing Guaranty provides the Lender to choose whom to sue and in what order. Moreover, the phrase is consistent with existing law, whereby a creditor may seek a personal judgment against any guarantor "since a guaranty is an obligation separate and independent from that binding the principal debtor." (*Coppola v. Superior Court* (1989) 211 Cal.App.3d 848, 865–866 [259 Cal.Rptr. 811]; see *United Central Bank v. Superior Court* (2009) 179 Cal.App.4th 212, 215 [101 Cal.Rptr.3d 395] (*United Central Bank*).)

We therefore agree with the trial court that the only way to give meaning to all of the terms of the Continuing Guaranty is to construe it as a guaranty. By reading the document as a whole, and giving force and effect to every clause and every word, it is clear the Continuing Guaranty is, in both form and substance, a guaranty. Thus, there are no triable issues of fact whether the document entitled "Continuing Guaranty," signed by Kolokotronis as the Guarantor and purporting to guarantee the obligations of the Borrower, Sheldon Terrace, is exactly what it purports to be—a guaranty.

The Guarantor insists the trial court's conclusion is at odds with the holding in a vintage case, *First Securities Co., Ltd. v. Story* (1935) 9 Cal.App.2d 270 [49 P.2d 862] (*Story*). The case is not only moldy, but factually inapposite.

It is true that the document at issue in *Story* was characterized as a direct primary obligation to pay money even though it bore the heading of " 'Guarantee Note.' " (*Story, supra,* 9 Cal.App.2d at p. 271.) The court looked beyond the mere designation of "guarantee" to the nature of the obligation, whether primary or secondary, to determine whether there was a true guaranty for purposes of the running of the statute of limitations. (*Ibid.*) And that is the crucial distinction between *Story* and the case before us.

In *Story*, "[t]he bank was given the right to sue the makers of the note even though it held ample security for payment of the amount advanced by it, and even though there were no default on the part of [the borrower]." (*Story, supra,* 9 Cal.App.2d at p. 273.) As a result, the court pointed out, "If this were a contract of guaranty the liability of the guarantors would not accrue until a default existed under the original obligation." (*Ibid.*) By the terms of the note, however, the obligors' promise was absolute and not conditional upon the borrower's default. The obligors quite simply promised to pay, on demand, all sums advanced or loaned by the bank. In the absence of any secondary liability, the court concluded the unambiguous instrument was not a guaranty. (*Id.* at p. 274.)

Here, by contrast, the Guarantor became liable only if the Borrower defaulted. Under the rationale utilized in *Story*, his liability was not primary, but secondary. The Guarantor, unlike his counterpart in *Story*, promised to guarantee payment of the loan on behalf of the Borrower. The note signed in *Story* stated: "In consideration of the sum of Ten Dollars, to us in hand paid by Pacific-Southwest Trust & Savings Bank of Los Angeles, California, the receipt whereof is hereby acknowledged, and for divers other valuable consideration, I/or we jointly and severally promise to pay to the said Pacific-Southwest Trust & Savings Bank of Los Angeles, California, or to their order, on demand, in gold coin of the United States of America, any and all sums of money which the said Pacific-Southwest Trust & Savings Bank of Los Angeles, California, may have heretofore advanced or loaned, or may hereafter advance or loan to Glenoaks, Inc., under a certain bond issue in the total amount of Six Hundred Twenty Five Thousand Dollars . . . ." (*Story, supra*, 9 Cal.App.2d at pp. 271–272.) There is simply no statement within the operative provisions of the note that the obligors were "guaranteeing a debt."

Here, however, the Guarantor "unconditionally guarantees and agrees to pay to Lender, on demand, in lawful money of the United States of America, an amount equal to the amount of the Credit, and to otherwise perform any obligations of Borrower undertaken pursuant to any Credit." The Continuing Guaranty states expressly that it is a "guaranty of payment and not of collection." We agree with the Lender that there is nothing in *Story* to preclude us from applying the ordinary and plain meaning of the term "guaranty" when it appears throughout a document not only bearing its title, but using the term as an express promise to answer for the debt, default, or miscarriage of the Borrower. (Civ. Code, § 2787.)

Moreover, the Guarantor acknowledges in the Continuing Guaranty that he has a multitude of rights as a guarantor/surety and then waives those rights. There was no similar waiver of rights in *Story*. Nor would any such waiver be effective if the obligor were not a guarantor. Again, to accept the Guarantor's argument would render meaningless many of the provisions of the written agreement and violate our basic duty to give effect to every part of the contract, considered as a whole. *Story* provides no support for violating these fundamental precepts of contract interpretation.

The Lender encourages us to apply the logic of *Coutin v. Nessanbaum* (1971) 17 Cal.App.3d 156 [94 Cal.Rptr. 453] (*Coutin*), wherein an ambiguous document entitled " 'Unconditional and Absolute Guaranty' " also contained a statement that it was " 'a *direct* and *primary* obligation.' " (*Id.* at p. 162, italics added by *Coutin*.) Based on the testimony of the apparent guarantor that it was her intent to pay if the primary borrower did not, the court concluded that the guarantor's obligations under the agreement were secondary to the

obligations of the primary obligor. (*Id.* at p. 163.) Thus, in *Coutin,* based on the parties' testimony, the court found the instrument was a guaranty, not a note. Similarly, the Lender here points out that the Guarantor declared, "When I entered into the Continuing Guaranty with CPB, it was my understanding that I would be responsible to pay the debt of Sheldon Terrace, LLC if it was unable to do so."

Here, however, we conclude the written instrument is not ambiguous. We need not rely on any extrinsic evidence to clarify the meaning of the document. The three phrases the Guarantor offers as indicia that the document is a demand note rather than a guaranty do not create the type of ambiguity found in *Coutin.* We need not rely on his understanding of the agreement and do not need to consider whether that understanding was expressed. The words of the document, when read in context and taken as a whole, are clear and unambiguous. *Story* does not suggest otherwise, and we need not rely on *Coutin* to bolster our interpretation of the plain language of the document.

We have no quarrel with the Guarantor's description of the strong public policy in this state in favor of the one-action and antideficiency protections for real property loans. But section 2856, subdivision (a) of the Civil Code expressly allows guarantors to waive those protections as follows: "Any guarantor or other surety, including a guarantor of a note or other obligation secured by real property or an estate for years, may waive any or all of the following: [¶] . . . [¶] (3) Any rights or defenses the guarantor or other surety may have because the principal's note or other obligation is secured by real property or an estate for years. These rights or defenses include, but are not limited to, any rights or defenses that are based upon, directly or indirectly, the application of Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure to the principal's note or other obligation."

The Guarantor unconditionally and exhaustively waived any rights or defenses that he may have had under California's surety statutes and antideficiency legislation. There are no disputed facts regarding his waiver. Analogous waivers have withstood challenge and are enforceable. (*Mariners Sav. & Loan Assn. v. Neil* (1971) 22 Cal.App.3d 232, 234–237 [99 Cal.Rptr. 238].) Thus, neither the one-action rule nor the antideficiency statutes pose a bar to the Lender's summary adjudication of the guaranty claim notwithstanding the rueful Guarantor's emotional plea to exonerate him from his promises in light of the economic downturn and the harsh consequences of the contract he entered during a more robust economic climate.

Finally, we agree with the Guarantor that the "issue here is whether the instant agreement qualifies as a guaranty in the first place. It is not whether a

guaranty is a separate obligation." He criticizes the trial court's statement that a guaranty is a separate and independent obligation from that of the principal debt, as well as the case the court cited as authority. (*United Central Bank, supra*, 179 Cal.App.4th at p. 215.) Yet the Guarantor recognizes that the distinction is immaterial because the dispositive question is whether he is a guarantor under the agreement. Having found the document qualifies as a guaranty as a matter of law, we need not examine the efficacy of *United Central Bank* or its progeny, or further consider any potential implications of any distinctions in the evolution of suretyship law.

■ As mentioned above, the Guarantor does not argue in this appeal that triable issues of material fact exist concerning the Borrower's default or his breach. The clear and express language of the guaranty provides that he "promise[d] to answer for the debt, default, or miscarriage" of the Borrower. (Civ. Code, § 2787.) Since we have resolved the sole issue on appeal, that is, whether the Continuing Guaranty Kolokotronis signed as a guarantor constitutes a guaranty, consistent with the trial court's ruling that the guaranty is indeed a guaranty, we must affirm the judgment. There are no triable issues of material fact to merit further proceedings.

## DISPOSITION

The judgment is affirmed.

Nicholson, J., and Mauro, J., concurred.