Filed 2/17/23 TIAA Commercial Finance v. Love Freightways CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| TIAA COMMERCIAL FINANCE, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> LOVE FREIGHTWAYS, INC., et al., <br><br> Defendants and Appellants. | B310379 <br> (Los Angeles County <br> Super. Ct. No. VC065860) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Olivia Rosales, Judge. Affirmed in part; reversed in part and remanded.

Law Offices of Akudinobi & Ikonte and Chijioke O. Ikonte for Defendants and Appellants Nemanja Lovre and Ana Maksimovic.

Hemar, Rousso & Heald and J. Alexandra Rhim for Plaintiff and Respondent.

Defendants Nemanja Lovre and Ana Maksimovic appeal from the judgment entered after the trial court granted summary judgment in favor of plaintiff TIAA Commercial Finance, Inc. (TIAA) on its claims for breach of written agreement, account stated, unjust enrichment, open book account, and breach of guaranty.[1] The genesis of the dispute is the failure of defendant Love Freightways, Inc. (Freightways), which is not a party to this appeal,[2] to pay its commercial loan obligation to TIAA, whose predecessor in interest financed Freightways' purchase of a fleet of commercial trucks. In addition to prevailing on claims based on Freightway's loan and security agreement, TIAA prevailed on its cause of action against Maksimovic for breach of the separate Continuing Guaranty agreement she signed wherein she guaranteed the performance and payment of Freightways' obligations under the loan agreement.

On appeal, Lovre and Maksimovic contend the trial court erred in granting summary judgment against them because (1) Freightways was fraudulently induced into entering the loan and security agreement by false representations regarding the working condition of the trucks; and (2) TIAA failed to produce any evidence demonstrating Lovre's individual liability under any causes of action against him. We agree with Lovre that TIAA failed to carry its initial burden on summary judgment demonstrating Lovre's

---

[1] Ana Maksimovic's last name is sometimes spelled Marksinovic in both the trial and appellate briefs. For consistency's sake, we use the name Maksimovic. Although the original plaintiff was TIAA's predecessor Everbank Commercial Finance, Inc. (Everbank), the court approved the change of plaintiffs' name to TIAA.

[2] Although summary judgment was granted against defendant Freightways, judgment was not entered against it due to a bankruptcy stay.

individual liability, and thus we reverse the summary judgment entered against him.  For the same reasons, we reverse the summary judgment on the second and third causes of action against Maksimovic; however, as to the fifth cause of action for breach of the Guaranty, we find Maksimovic forfeited any claim of error as to the grant of summary judgment against her.  We affirm the grant of summary judgment on this fifth cause of action and remand for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

1.    *TIAA's Complaint*

TIAA alleged that its predecessor in interest, GE Capital Commercial (GE), and Freightways entered into an October 18, 2013 Loan and Security Agreement (hereinafter the Agreement) to finance Freightways' purchase of three commercial trucks.  Simultaneously, Freightways' president, Maksimovic, personally executed a "Continuing Guaranty" wherein she unconditionally guaranteed all of Freightways' liabilities under the Agreement.  GE subsequently sold and assigned its rights, title, and interest in the Agreement and the trucks themselves to TIAA's predecessor.  Around January 2016, the defendants (Freightways, Lovre, and Maksimovic) breached the terms of the Agreement by failing to make monthly installment payments then due and owing.  After receiving no payment from Freightways, Lovre, or Maksimovic, TIAA filed this action seeking the principal sum together with accrued interest, continuing interest at 18

percent per annum, and reasonable attorney fees in accordance with the terms of the Agreement.[3]

The complaint alleged five causes of action: (1) breach of written agreement against Freightways; (2) account stated against all three defendants; (3) unjust enrichment against all three defendants; (4) open book account against Freightways; and (5) breach of guaranty against Maksimovic.

2.    *TIAA's Motion for Summary Judgment*

TIAA moved for summary judgment against all three defendants. TIAA argued that the evidence it proffered (the Agreement, Continuing Guaranty, and a declaration by Annette McGovern, a senior litigation manager for TIAA) established that there was "no triable issue of material fact as to the Complaint . . . . It is undisputed that Freightways executed the Agreement and breached its terms. It is likewise undisputed that [Maksimovic] entered [into] the Continuing Guaranty and has breached its terms." TIAA specified the exact amount owing on all five causes of action totaled $253,673.93 for unpaid principal, interest, and fees. TIAA contended that Maksimovic, as guarantor of the loan, was jointly and severally liable for the full amount. Further, TIAA argued all "Defendants" (defined as including all three named defendants) were jointly and severally liable for the full sum; they had received the benefit of credit to purchase the trucks and been unjustly enriched by enjoying the use of the trucks without making the agreed upon payment. McGovern requested a judgment in the amount of

---

[3]    After TIAA filed the complaint, Freightways and Lovre filed a cross-complaint against TIAA's predecessor, GE, and the third party who sold the trucks to Freightways. Freightways and Lovre filed a request to dismiss their cross-complaint without prejudice on July 27, 2021.

4

$253,673.93 against defendants plus reasonable attorney fees as contemplated in the Agreement.

a. *The Agreement*

Pursuant to the Agreement, GE (and its assignees), the "Lender," agreed to loan Freightways, the "Debtor," $244,139.50 for the purchase of three commercial tractor trucks. Freightways agreed to pay GE "principal plus pre-computed interest and any administrative fees set forth below (the 'Total Amount') of $304,800.00 in 60 installments." GE was directed to disburse $244,139.50 to Yancey Truck Centers LLC as payment for the trucks. To secure full payment and performance on the debt by Freightways, the Agreement provided that GE (and its assignees) would hold a first priority security interest in the trucks. Two signatures appear on the Agreement, the first being an individual "Authorized Signer" for GE; the second being Maksimovic, who was identified as the President of Freightways. The Agreement also set forth various terms and conditions under separate headings (Equipment, Security Interest, Account Management and Payment Processing, Performance by Lender, Default and Remedies, Prepayment, and Assignment and General Provisions).

Section 1.1 of the Agreement provided in all capital lettering: "Lender makes no representations or warranties, express or implied, as to the quality, workmanship, design, merchantability, suitability, or fitness of the equipment for any particular purpose, or any other representation or warranty whatsoever, express or implied." Also appearing in all capital lettering in Section 7.4 was a provision wherein the parties agreed that "[t]his written agreement represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous, or

5

subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties." Further, a section entitled "Delivery and Acceptance of Equipment" included the following provision: "Debtor's obligations and liabilities to Lender are absolute and unconditional under all circumstances and regardless of any failure of operation . . . of any item of Equipment . . . [¶] On October 18, 2013, the Equipment being purchased with the proceeds of this Agreement was delivered to Debtor . . . ; the Equipment was inspected by Debtor and found to be in satisfactory condition in all respects and delivery was unconditionally accepted by Debtor."

### b.  *The Continuing Guaranty*

In the Continuing Guaranty, Maksimovic agreed to be a guarantor who "hereby unconditionally guarantee[s] to [TIAA that Freightways] shall promptly and fully perform, pay and discharge all of its present and future liabilities, obligations and indebtedness to [TIAA]. . . . This Guaranty is an absolute and unconditional guarantee of payment and not of collectability. The liability of each Guarantor hereunder is not conditional or contingent upon the genuineness, validity, sufficiency or enforceability of the Indebtedness or any instruments [or] agreements . . . related thereto." Maksimovic guaranteed to "pay on demand the entire Indebtedness and all losses . . . and expenses which may be suffered by [TIAA] by reason of [Freightways'] default" under Freightways' written agreement. Maksimovic also agreed that "this Guaranty shall not be discharged or affected by any circumstances which constitute a legal or equitable discharge of a Guarantor or surety, . . . such Guarantor will not avail itself of any defense whatsoever which [Freightways] may have against [TIAA]." Maksimovic executed the Continuing Guaranty on October 18, 2013.

6

In her declaration, McGovern summarized the secured loan transaction between Freightways and TIAA's predecessor in interest, including the execution of the Agreement and Continuing Guaranty. McGovern stated that despite TIAA's full performance under the Agreement, on approximately January 10, 2016, and continuing thereafter, Freightways breached the terms of the Agreement by failing to make required monthly payments and refusing to make any further payments. TIAA had recovered and resold one of the three commercial trucks for a sum that TIAA credited against the amounts owing by Freightways. Thereafter, around June 2016, TIAA learned that the two remaining trucks had been sold and reregistered to another trucking company, and released to unknown third parties. Reconveyances of the trucks to third parties "rendered [them] valueless as collateral" under the Agreement.

Per the terms of the Agreement, TIAA accelerated the balance due and demanded prompt payment from "Defendant."[4] After crediting the sale of the one commercial truck that TIAA recovered, McGovern stated that TIAA was owed $253,673.93 for outstanding principal, accrued and accelerated interest, and a termination fee.

3. *Filings in Opposition to TIAA's Motion*

In opposition to TIAA's motion for summary judgment, Freightways, Lovre, and Maksimovic jointly filed a response to TIAA's separate statement

---

[4]     The designation "Defendant" is not defined in McGovern's declaration, though the term appears to refer only to Freightways.

of undisputed facts, supported by a declaration by Lovre. Defendants did not initially file a memorandum of points and authorities.

a.  *Response to TIAA's Statement of Undisputed Facts*[5]

In their response, Freightways, Lovre, and Maksimovic conceded that the following facts were undisputed: (1) Freightways entered into the Agreement with GE on or about October 18, 2013, to finance three commercial trucks; (2) GE assigned the Agreement to TIAA; (3) Maksimovic executed the Continuing Guaranty for all of Freightways's liabilities; (4) Freightways received and accepted the trucks; (5) TIAA recovered and resold one truck but could not recover the two other trucks; (6) Freightways, Lovre, and Maksimovic received and used the trucks without fully paying for them; and (7) a total sum of $253,673.93 (computed by totaling the outstanding amounts due less all credit) remained unpaid.

Defendants disputed the following facts: (1) TIAA performed all of the terms and conditions of the Agreement; (2) Freightways breached the terms of the Agreement by not making monthly payments due and owing; and (3) all three defendants were indebted to TIAA in the sum of $253,673.93. Defendants cited to Lovre's declaration to dispute these facts.

b.  *Declaration of Lovre*

Lovre declared that he is the owner of Freightways and was responsible for "all the decisions for the purchase and finance of the trucks." Lovre negotiated the purchase and financing with George Cortes, an individual who

---

[5]    The appellant's appendix does not include the initial statement of undisputed facts filed by TIAA.

held himself out as a representative of the seller (Navistar) and the "in-house finance company for Navistar" (GE). Cortes represented that "Navistar provides the equipment, GE provides the money," and Freightways' only option was to finance the purchase through GE. When discussing the condition of the trucks with Lovre, Cortes stated that the trucks were "'excellent vehicle[s] that will last for years without giving any problems.'" Cortes did not inform Lovre that the trucks had been returned by previous owners due to having defective engines. Freightways made payments on the trucks until discovering they had defective engines.[6] Lovre notified GE and protested making any further payments. Lovre "would not have entered into the financing agreement" if he knew about the defects in each truck.

4.    *TIAA's Reply in Support of Motion*

In reply, TIAA argued that while it had not received any written opposition to its summary judgment motion, it construed the documents filed by defendants as raising the defense that "because the trucks did not perform as [defendants] expected them to perform," defendants "should not have to make repayment." In response, TIAA pointed to the express disclaimers appearing in Section 1.1 of the Agreement disclaiming any representation regarding the merchantability or condition of each truck.

Section 1.1 of the Agreement provided in all capital lettering: "Lender makes no representations or warranties, express or implied, as to the quality, workmanship, design, merchantability, suitability, or fitness of the equipment for any particular purpose, or any other representation or

---

[6]    Lovre listed numerous incidents between 2013 and 2014 wherein the trucks either broke down or were otherwise inoperable.

warranty whatsoever, express or implied." TIAA also pointed to the provision in the Agreement that "Debtor's obligations and liabilities to Lender are absolute and unconditional under all circumstances and regardless of any failure of operation or Debtor's loss of possession of any item of Equipment." Given the clear and conspicuous language of the disclaimers, TIAA argued that "any claims by [defendants] that they are not indebted to [TIAA] because the vehicles . . . did not perform as hoped, are irrelevant."

5.     *Subsequent Declaration by Defendants' Trial Counsel*

The day before the court held a hearing on TIAA's motion for summary judgment, counsel for defendants filed a declaration informing the court that he had mistakenly filed a second copy of Lovre's declaration in place of defendants' opposition to TIAA's motion for summary judgment. Counsel attached to his declaration the written opposition. In the opposition, defendants argued that Cortes, an "agent" for the seller and financing company, had misrepresented the condition of the trucks during his discussions with Lovre. Given these misrepresentations, defendants argued that GE had fraudulently induced Freightways to enter into the contract. Citing Civil Code section 1567, which provides that an apparent consent to a contract when obtained through fraud "is not real or free," defendants concluded that "[t]riable issues of fact exist as to . . . whether consent was fraudulently procured. . . . [¶] Also, there is no basis for summary judgment against [Lovre]. [TIAA] has failed to set forth the basis for liability of Lovre who acted on behalf of a corporate entity."

10

6.      *The Summary Judgment Ruling and Subsequent Judgment*

At the hearing on TIAA's motion for summary judgment, the court stated that it would consider the written opposition, while untimely filed, in the interests of justice and judicial efficiency. Proceeding to the arguments raised in the opposition, the court rejected the fraudulent inducement defense, reasoning that the disclaimers appearing in the Agreement provided that TIAA had made no representations "as to the quality, workmanship, design, merchantability, suitability, or fitness of the equipment . . . or any other representation or warranty whatsoever, express or implied." After finding several facts undisputed (i.e., the parties entered into a contract, defendants received and accepted the trucks, and defendants made monthly payments until the time of default), the court granted TIAA's motion for summary judgment.

Thereafter, the court entered judgment on October 14, 2020, for TIAA and against defendants Lovre and Maksimovic in the amount of $253,673.93.

## DISCUSSION

On appeal and in their opposition to the motion for summary judgment, appellants made two arguments: (1) no evidence was presented establishing Lovre's individual liability on the causes of action against him; and (2) the Agreement was procured by fraud and therefore voidable.

1.      *TIAA Failed to Set Forth a Prima Facie Showing of Lovre's Liability*

Lovre contends that TIAA failed to meet its initial burden of proof at the summary judgment stage to show that there was no triable issue of material fact as to his individual liability on any cause of action asserted against him. We agree.

11

A motion for summary judgment is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "The moving party bears the initial burden to make a prima facie showing that no triable issue of material fact exists. [Citation.] If this burden is met, the party opposing the motion bears the burden of showing the existence of disputed facts." (*Sosa v. CashCall, Inc.* (2020) 49 Cal.App.5th 42, 47 (*Sosa*), citing *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) "Courts '"construe the moving party's affidavits strictly, construe the opponent's affidavits liberally, and *resolve doubts about the propriety of granting the motion in favor of the party opposing it*."' [Citation.]" (*Sosa,* at p. 47.) We review a grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party or a determination a cause of action has no merit as a matter of law. (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 286; *Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618.)

The complaint names Lovre as a defendant in the second cause of action for account stated and the third cause of action for unjust enrichment. A cause of action for an account stated requires proof of an executory contract or agreement "'based on prior transactions between the parties, that the items of an account are true and that the balance struck is due and owing.' [Citation.] '[A]n element essential to render the account stated is that it receive the assent of both parties, but the assent of the party sought to be charged may be implied from his conduct.' [Citation.] For example, '[w]hen a statement is rendered to a debtor and no reply is made in a reasonable time, the law implies an agreement that the account is correct as rendered.'

12

[Citation.]" (*Professional Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 968; accord, *Gardner v. Watson* (1915) 170 Cal. 570, 574 [when an account stated is "'assented to, either expressly or impliedly, it becomes a new contract'"].)

As for the cause of action for unjust enrichment, there is a split in authority on whether such a discrete cause of action exists. (See *Ghirardo v. Antonioli* (1996) 14 Cal.4th 39, 50, 52, 53–55 [recognizing split in authority]; compare *Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1370 ["'[T]here is no cause of action in California for unjust enrichment'"] with *Lyles v. Sangadeo-Patel* (2014) 225 Cal.App.4th 759, 769 [recognizing unjust enrichment as a cause of action].) Even if not "strictly speaking, a theory of recovery," unjust enrichment may be asserted whenever a person "'acquires a benefit which may not justly be retained,'" in which case the court shall order the "'return [of] either the thing or its equivalent to the aggrieved party so as not to be unjustly enriched.' [Citation.]" (*Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1132; see *O'Grady v. Merchant Exchange Productions, Inc.* (2019) 41 Cal.App.5th 771, 781 [unjust enrichment is "'synonymous with restitution'"]; *Rutherford Holdings, LLC v. Plaza Del Rey* (2014) 223 Cal.App.4th 221, 231 [unjust enrichment "'is not a cause of action,'" but a general principle underlying "a quasi-contract claim seeking restitution"].)

Strictly construing the motion for summary judgment and its supporting evidence in this case, we conclude that TIAA has failed to set forth a prima facie showing that Lovre is individually liable on either the cause of action for account stated or under an unjust enrichment theory. (See *Sosa, supra,* 49 Cal.App.5th at p. 47.) As Lovre correctly identifies, his name does not appear in TIAA's memorandum of points and authorities in support

13

of its motion for summary judgment, nor does his name appear in TIAA's separate statement of undisputed facts. The evidence set forth in the separate statement establishes only that Freightways received and accepted the commercial trucks; that Freightways made monthly payments in accord with the monthly payments then due and owing until it failed to make any such payment; and that "Defendants" did not object to the amounts due.[7] These facts do not demonstrate that Lovre personally assented to the monthly bills received by Freightways, or that he was unjustly enriched at TIAA's expense.

Resisting this conclusion, TIAA argues that Lovre's declaration (filed in opposition to TIAA's motion for summary judgment), sets forth a prima facie showing of Lovre's individual liability as the owner of Freightways who handled negotiations for the purchase and financing of the trucks.[8] From these isolated statements, TIAA contends that Lovre is personally liable on

---

[7]  TIAA did not define "Defendants" in its separate statement. It did define "Defendants" in its memorandum of points and authorities as including only "Freightways and Ana [Maksimovic]." Although the declaration of Annette McGovern in support of TIAA's motion for summary judgment defined "Defendants" to include Freightways, Maksimovic, and Lovre, in that declaration McGovern vaguely referred to a singular "Defendant" in stating, "Plaintiff sent monthly billing statements to Defendant and at no time did Defendant object to the amounts due in the monthly statements." The monthly billing statements attached to McGovern's declaration are addressed to Freightways; Lovre's name does not appear in any billing statement.

[8]  TIAA identifies the following portion of Lovre's declaration: "I am the owner of [Freightways]. I was responsible for all the decisions for the purchase and finance of the trucks that is the subject matter of this litigation. I handled the negotiations for the purchase and financing of the trucks that is the subject of the litigation."

14

the second and third causes of action because he "either *directed* or *failed to take action* to prevent Freightways from" defaulting on the Agreement.

TIAA has forfeited this argument because it never asserted this theory of liability in its briefing to the trial court. (See *G & W Warren's, Inc. v. Dabney* (2017) 11 Cal.App.5th 565, 571–572 [respondent forfeited new legal theory purporting to hold individual liable as principal to purchase documents]; *Magallanes de Valle v. Doctors Medical Center of Modesto* (2022) 80 Cal.App.5th 914, 924 [possible theories not fully presented to the trial court cannot be asserted for first time on appeal from summary judgment].) Moreover, TIAA's argument is perfunctorily raised without any relevant legal authorities. (See *Sweeney v. California Regional Water Quality Control Bd.* (2021) 61 Cal.App.5th 1093, 1149 [respondent forfeited argument by raising it without supporting evidence or relevant law]; *People v. Freeman* (1994) 8 Cal.4th 450, 482, fn. 2 [reviewing courts "discuss those arguments that are sufficiently developed to be cognizable. To the extent [a litigant] perfunctorily asserts other claims, without development . . . , they are not properly made, and are rejected on that basis"].)[9]

_____

[9] The two cases cited by TIAA in support of its conclusion that Lovre should be held personally responsible on causes of action for account stated and unjust enrichment are acutely inapposite. Neither of those cases purported to address imputing liability on causes of action based on the contract or quasi-contract principles applicable in this case, as opposed to tort principles. (See *Frances T. v. Village Green Owners Assn.* (1986) 42 Cal.3d 490, 504 (*Frances T.*) ["Directors are jointly liable with the corporation and may be joined as defendants if they personally directed or participated in the *tortious conduct*"], italics added; *PMC, Inc. v. Kadisha* (2000) 78 Cal.App.4th 1368, 1380 ["As the Supreme Court held in *Frances T.*, *supra*, 42 Cal.3d at pages 508–509, 'To maintain a *tort claim* against a director in his or her personal capacity, a plaintiff must first show that the director specifically authorized, directed or participated in the allegedly *tortious conduct*

15

Accordingly, the judgment in favor of plaintiffs and against Lovre is reversed.

2.  *Maksimovic's Liability*

TIAA named Maksimovic as a defendant in the second cause of action for account stated, the third cause of action for unjust enrichment, and the fifth cause of action for breach of the Guaranty. However, the same infirmities in TIAA's summary judgment showing as to Lovre require reversal of the judgment against Maksimovic on the causes of action for account stated and unjust enrichment. TIAA failed to allege any facts to support holding Maksimovic personally liable on these two claims and thus failed to carry its burden.

By contrast, with respect to the remaining fifth cause of action against Maksimovic for breach of the Guaranty, in its moving papers TIAA made a prima facie showing that no triable issue of material fact exists. "A lender is entitled to judgment on a breach of guaranty claim based upon undisputed evidence that (1) there is a valid guaranty, (2) the borrower has defaulted, and (3) the guarantor failed to perform under the guaranty." (*Gray1 CPB, LLC v. Kolokotronis* (2011) 202 Cal.App.4th 480, 486.) TIAA having proffered evidence to satisfy each of these elements, the burden shifted to Maksimovic

---

[citation]; *or . . . they negligently failed to take or order appropriate action to avoid the harm'*], italics added.) As the Supreme Court recognized in *Frances T.*, the standards set forth in these cases are distinct from the standards used to impute liability on contract-based causes of action. (See *Frances T.*, at p. 504 ["This liability does not depend on the same grounds as 'piercing the corporate veil,' on account of inadequate capitalization for instance, but rather on the officer or director's personal participation or specific authorization of the tortious act"].)

16

to demonstrate a triable issue as to her liability for breach of the Guaranty. (See Code Civ. Proc., § 437c, subd. (p)(1); *S.B.C.C., Inc. v. St. Paul Fire & Marine Ins. Co.* (2010) 186 Cal.App.4th 383, 388.) However, neither the briefs filed on her behalf in this court, nor any of the briefs or the declaration submitted in the trial court in opposition to the motion for summary judgment, mention Maksimovic's name or the Continuing Guaranty in any legal discussion, much less demonstrate any triable issues as to her liability for breach of the Guaranty.

"[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, . . . that the trial court committed an error that justifies reversal of the judgment. [Citations.] 'This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citations.]" (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) An appellant's burden "'includes the obligation to present *argument and legal authority* on *each point* raised. This requires more than simply stating a bare assertion that the judgment, or part of it, is erroneous and leaving it to the appellate court to figure out why; it is not the appellate court's role to construct theories or arguments that would undermine the judgment. . . .' [Citation.]" (*Lee v. Kim* (2019) 41 Cal.App.5th 705, 721 (*Lee*); accord, *Hewlett–Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 565; *Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368.) This rule is the same when an appellate court conducts a de novo review of an appeal following the grant of summary judgment. (*Vasquez v. Department of Pesticide Regulation* (2021) 68 Cal.App.5th 672, 685; see *Villalobos v. City of Santa Maria* (2022) 85 Cal.App.5th 383, 388 [""it is the appellant's responsibility . . . to point out the triable issues the appellant claims are present by citation to the record

and any supporting authority"""].)  As such, whenever an appellant """fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as [forfeited].""  [Citations.]"  (*Lee*, at p. 721; see *Rubio v. CIA Wheel Group* (2021) 63 Cal.App.5th 82, 105 [an appellant must "'not only cite to valid legal authority, but also explain how it applies in his case'"; the appellate court should not speculate about which issues he intended to raise].)

In her pleadings opposing summary judgment and her appellate briefs, Maksimovic focuses only on alleged oral warranties as to the good working condition of the trucks made by an agent, George Cortez, who jointly represented the lender and the seller of the trucks.  Her sole contention is that the Agreement was voidable because Freightways was fraudulently induced to enter the Agreement by Cortez's misrepresentations.  (See *Brown v. Wells Fargo Bank, N.A.* (2008) 168 Cal.App.4th 938, 958 ["[a] contract fraudulently induced is voidable"].)  Only after we notified the parties following the completion of their briefing that it appeared Maksimovic had forfeited her contentions on appeal did she articulate a theory that the alleged fraudulent inducement of the underlying Agreement between TIAA and Freightways not only rendered that Agreement voidable, but also eliminated any liability for Maksimovic's failure to perform the separate Guaranty.  Her belated and conclusory argument in this regard is insufficient to raise a triable issue, and we deem it forfeited.  Moreover, Maksimovic failed to address the effect of the express and unambiguous waivers in the Guaranty of any right to rely on defenses to performance of the underlying Agreement.  In unconditionally guaranteeing payment of Freightways' debt to TIAA, Maksimovic agreed that her liability as a guarantor was "not conditional or contingent upon the genuineness, *validity*, sufficiency or

18

*enforceability* of the Indebtedness or any instruments, *agreements*, or chattel paper related thereto," and agreed that "this Guaranty shall not be discharged or affected by any circumstances which constitute a *legal or equitable discharge* of a Guarantor or surety, . . . *such Guarantor will not avail itself of any defense whatsoever which* [*Freightways*] *may have against* [*TIAA*]." (Italics added.)

As discussed above, this court's role is not to construct theories or arguments that would undermine the judgment. (*Lee, supra,* 41 Cal.App.5th at p. 721.) Thus, it is not appropriate for us to try to construct arguments for Maksimovic as to why her express waivers of defenses, including a defense of fraudulent inducement, may not be effective.[10] We thus affirm the grant of summary judgment against Maksimovic on the claim for breach of the Guaranty.

---

[10]  Even assuming Maksimovic could rely on defenses to the validity or enforceability of the Agreement to argue that the Guaranty was likewise unenforceable, she also fails to adequately address the trial court's conclusion that the defense of fraudulent inducement based on oral warranties by Cortez was foreclosed by the Agreement's express and conspicuous written disclaimers of any warranties as to the trucks' condition. (See Com. Code, §§ 2202 ["Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement"]; 2316, subd. (1) ["Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this division on parol or extrinsic evidence (Section 2202) negation or limitation is inoperative to the extent that such construction is unreasonable"].)

## DISPOSITION

The judgment is affirmed as to the fifth cause of action against Maksimovic and in favor of TIAA. The judgment against Maksimovic and Lovre on the second and third causes of action is reversed. The matter is remanded to the trial court with directions to enter a new order denying the motion for summary judgment as to Maksimovic and Lovre on these two causes of action, and to conduct further proceedings on the causes of action remaining against Lovre and Maksimovic. Each party shall bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STONE, J.*

We concur:


CURREY, Acting P. J.


COLLINS, J.


---

*Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.